JOHN WILLIAMS, appellant,

*v.*

M. E. BLATT COMPANY, respondent.

[Decided October 19th, 1923.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"Complainant's bill is for an injunction by means of which it is sought to enforce the observance by defendant of a certain written contract between complainant and Braunstein-Blatt Company, a corporation whose name has since been changed to M. E. Blatt Company, defendant above named.

"By the agreement referred to, defendant, as the owner of a large department store, has leased to complainant what is referred to in the contract as a hair dressing department to occupy certain specified space in defendant's department store.

"The specific controversy relates to the extent to which the rights conferred upon complainant are exclusive. It is conceded that under the contract defendant has no right to operate or permit anyone other than complainant to operate what the contract defines as a hair dressing department, but defendant contends that the right conferred upon complainant to sell certain merchandise in that department was not intended to be an exclusive right and thereby deny to defendant the privilege of continuing the operation in that store of two certain departments known respectively as the toilet goods department and the notion goods department, in which departments goods are sold which include the same kind as those which complainant is authorized by his contract to sell, whereas complainant claims that the privilege conferred upon him by the contract includes not only the exclusive right to sell the merchandise referred to in the contract.

"A writing styled an *'addenda'* was by defendant annexed to the contract and signed by defendant at the same time the contract was signed by defendant, but that *addenda* was not signed by complainant. That *addenda* specifically stated that the sales privileges of complainant referred to in the contract should not be considered as exclusive. That paper and other circumstances of the case render necessary a consideration of the negotiations and various acts of the parties to adequately ascertain their respective rights at this time.

"The testimony discloses the following facts:

"Louis E. Stern, secretary of defendant company, prepared the first draft of a proposed contract between the parties and gave it to complainant for his approval.

"Touching the privileges conferred on complainant, so far as of interest here, that proposed contract provided:

"'*   *   *   the B. B. Co. [defendant herein] hereby grants unto Williams the exclusive privilege of conducting a hair dressing department in the department store of the B. B. Co., located at the corner of South Carolina and Atlantic avenues, Atlantic City, New Jersey, said hair dressing department to be operated and conducted under the terms and conditions hereinafter mentioned:

" '1. The term hair dressing department is hereby construed to include manicuring, shampooing, massage, hair dressing, and a children's barber shop, as well as the right to sell hair goods, hair decorations, hair nets and such toilet articles as shall be approved by the B. B. Co., and such other articles as are usually sold in high-class hair goods stores.'

"That draft of contract was taken by complainant to H. Walter Gill, his attorney, and Mr. Gill made several modifications and retyped the contract in quadruplicate, as altered by him.

"The redraft of the part above quoted was as follows:

" '* * * the B. B. Co. hereby leases and grants unto Williams the exclusive privilege of conducting a hair dressing department in the department store of the B. B. Co., located at the corner of South Carolina and Atlantic avenues, Atlantic City. New Jersey, said hair dressing department to be operated and conducted under the terms and conditions hereinafter mentioned :

" '1. The term hair dressing department, to which Williams is given the exclusive right, is hereby construed to include manicuring, shampooing, massage, hair dressing and a children's barber shop, as well as the right to sell hair goods, hair decorations, hair nets and such articles, lotions. &c., as are usually sold in high-class hair goods stores, provided. however, that any article sold in this hair dressing department shall have a first-class reputation in the trade, or shall be approved by the B. B. Co.'

"The only other modification made by Mr. Gill, which here need be considered, required defendant to supply gas and electricity not only for general heating and lighting purposes, but apparently for power purposes.

"The copies prepared by Mr. Gill were then signed by complainant, and two of them sent to Mr. Stern for execution by Mr. Blatt for the company.

"Mr. Stern then prepared the *'addenda'* already referred to as follows:

" 'This *addenda* is made prior to the execution of the agreement, to construe the following :

" '1. As to paragraph 1, page 1, it is expressly understood that "hair nets and such articles as lotions, &c.," shall not be exclusive to Williams. Williams fully understanding that these articles are now sold in other departments of the Braunstein-Blatt Co. store, and that all toilet articles are part of the Braunstein-Blatt Co. business.

" '2. That as to paragraph 3, where the words "gas" and "electricity" are mentioned, the Braunstein-Blatt Co. agrees to furnish either gas or electricity for lighting purposes only, and if either gas or electricity are used for other purposes, it shall be under arrangement whereby the said Williams shall pay the exact cost of the powers so used.'

"Mr. Stern then had Mr. Blatt, as president of the company, sign the duplicate contracts which had been signed by complainant, and at the same time sign the *addendas* which had been annexed, and Mr. Stern in like manner signed and sealed the contract and *addenda.*

"One of the contracts with the *addenda* annexed was then forwarded by Mr. Stern to complainant.

"Complainant then took the contract to Mr. Gill and told him the *addenda* was not satisfactory to him. Soon thereafter complainant and Mr. Gill met Mr. Blatt on the street and complainant and Mr. Blatt entered into a discussion of the *addenda.* Up to this point there is no dispute touching the fact.

"The only conflict in the testimony touching the *addenda* is as follows: Mr. Blatt testified that complainant objected to the *addenda* because of the clause relating to gas and electricity, and made no other objection; that after some discussion he (Blatt) yielded and said 'cross that out.' Complainant testifies that he complained of both clauses and that Mr. Blatt finally said 'tear the *addenda* out.' Mr. Gill is unable to recall whether the discussion related to both clauses of the *addenda,* but is positive that Mr. Blatt said 'tear it out.'

"Mr. Gill subsequently telephoned to Mr. Stern that he had seen Mr. Blatt, and that he (Blatt) had said that the *addenda* could be torn out. Subsequently, Mr. Stern telephoned Mr. Gill that Mr. Blatt had confirmed his (Gill's) telephone message.

"For reasons hereinafter more fully set forth I do not believe there can be any reasonable doubt as to what actually occurred in that interview on the street touching which the testimony is in partial conflict. I am fully convinced that the only objection that complainant made to Mr. Blatt about

the *addenda* was touching the gas and electric clause, and that Mr. Blatt was thereby led to understand that that was the only feature of the contract, as it had stood when he had affixed his signatures, to which complainant objected, and that it was the only unsettled matter between the parties, and so believing and understanding he ordered the *addenda* to be 'torn out' without knowing at the time that it contained any other matter and without any intent to thereby confer an exclusive sales privilege on complainant.

"Returning now to the original contract without an *addenda*, I entertain the view that while the strictly grammatical construction to be given to the language above quoted from the original draft of contract prepared by Mr. Stern, and also that as framed by Mr. Gill in the contract which was signed, is to understand the word 'exclusive' as persisting throughout the paragraph, and therefore applying to the sales privileges, I can see how the language 'as well as the right to sell' could have been understood by one having no thought of conveying an exclusive right to sell as meaning merely the right to sell the enumerated articles, and especially so as to one who knew that in department stores throughout the country leased hair-dressing departments uniformly enjoyed in connection with the exclusive right to operate as such a right to sell articles incident to their work only in common with the notions and toilet goods departments of the stores.

"I believe Mr. Stern speaks the truth in his statement that he understood the language first adopted by him to mean as last above suggested, and that he first thought some doubt might exist as to that meaning when he read Mr. Gill's draft, and that he then drew the *addenda* to make it certain, but still believing it reasonably adequate without that part of the *addenda*.

"I believe Mr. Blatt's testimony to the effect that he never negotiated with Williams for the sale of the exclusive right to sell merchandise, and never intended to confer such a right, and that he did not understand the contract to profess to confer such a right.

"I fully believe that by reason of the objection made by complainant to the *addenda* on the specific and sole ground that it denied to complainant the free use of power, Mr. Blatt was led to believe that that was the only unsettled matter between he parties, and waived the *addenda* in that belief and with that intent and understanding.

"I do not believe that complainant ever negotiated for, paid for, or understood that he purchased an exclusive sales right, and I do not believe that he ever fully realized that the papers afforded him a substantial claim of that nature until after the papers had been delivered.

"I believe the testimony of Mr. Stern to the effect that he considered that the contract without an *addenda* conveyed no exclusive sales right, and carelessly acceded to the elimination of the *addenda* when told by Mr. Blatt that he had adjusted the matter with complainant, and that the *addenda* could be torn out.

"My belief touching these several matters above referred to is fixed and irresistable. That belief is not alone based upon the testimony of the witnesses upon the witness-stand. The evidence discloses that at the time the contract was made defendant's department store contained the two departments already referred to as the notions and toilet goods departments. Each of these departments were large and important and well-equipped departments, which necessarily would be largely put out of business by the exclusive sales right which complainant claims. It is impossible to believe that defendant could have intended to confer such an exclusive right on complainant, and especially so in a lease of a department apparently inadequate in space to supply the necessity of such departments in a department store. Nor did the equipment which complainant installed indicate a purpose on his part to exercise an exclusive sales right of the articles which he now claims the exclusive privilege of selling.

"Furthermore, it will be observed that the tenth paragraph of the contract provides: 'The B. B. Co. [defendant] agrees that all merchandise sold to the said hair dressing department by it shall be sold to Williams at cost.' By this clause it is

clearly contemplated that the articles which complainant is to sell may be carried by defendant in his store, with the privilege of complainant to buy such articles at cost. It cannot be possible that the articles were to be carried by defendant solely for complainant's privilege of buying them at cost.

"In my judgment the truth is that neither of the parties at any times contemplated or undertook to agree that complainant should enjoy an exclusive sales right; that complainant in fact neither bargained for nor paid for any such right, and any language in the contract which may be said to indicate to the contrary is the result of inadvertence and mistake, and not the product of mutual engagement or mind-meeting of the parties.

"The point is urged on behalf of complainant that defendant has not by counter-claim or otherwise sought a reformation of the contract. That is true. But by this suit complainant appeals to the equitable jurisdiction of this court for affirmative relief through the medium of its extraordinary process of injunction, and by the use of that negative process complainant seeks to effect the specific performance of the contract. A court of conscience cannot properly award relief of even that nature in pursuance of the letter of a contract when to do so is subversive of justice between the parties. It is one of the necessary inherent qualities of a decree for specific performance that it does complete justice. *King* v. *Morford, 1 N. J. Eq. (Saxt.) 274, 282.* In suits of this nature this court will grant its aid or not, according to the justice of the case. *Miller* v. *Chetwood, 2 N. J. Eq. (1 Gr. Ch.) 199, 208.* A decree for specific performance will never be made unless substantial justice will be advanced thereby. *Ely* v. *Perrine, 2 N. J. Eq. (1 Gr. Ch.) 396, 402.* 'This court will not become an instrument of injustice, and if the case presented is such that it would be unconscientious to grant the complainant the relief he seeks, and repugnant to a just sense of right between man and man, the court will refuse its aid. * * * The defendant may be unable to prove any mistake, fraud or accident, in reference to its execution, and yet the conduct of the complainant may have induced such a state of things

in relation to the subject-matter of the agreement as would make it not only proper, but the plain duty of the court to refuse its aid in enforcing its specific performance.' *Stoulenburgh* v. *Tompkins, 9 N. J. Eq. (1 Stock.) 332, 335, 336.* 'The remedy by specific performance is discretionary. The question in such cases is not what must the court do, but what, in view of all the circumstances of the case in its judgment, should it do to further justice.' *Johnson* v. *Somerville, 33 N. J. Eq. (6 Stew.) 152, 153.* An unintentional misrepresentation of a material matter will be operative as a bar to a decree for specific performance. *Wuesthoff* v. *Seymour, 22 N. J. Eq. (7 C. E. Gr.) 66, 69.* The material inquiry is not whether a complainant intended to mislead defendant, but is, Did he mislead him? Prof. Pomeroy says:

" 'In maintaining the defence to a suit for specific performance the knowledge, belief, or intent of the party making the representations is wholly immaterial, and the question is not raised. The point upon which the defence turns is the fact of the other party having been misled by a representation calculated to mislead him, and not the existence of a design to this mislead.' *Pom. Spec. Perf.* § *217.*

"In *Baskcomb* v. *Beckwith,'L. R. 8 Eq. Cas. 100,* a map was exhibited to the purchaser which was not misleading if examined carefully, and which was not intended to mislead, but which was liable to mislead if not carefully examined, and which map did in fact mislead the purchaser; specific performance was accordingly denied. The decree denying relief does not operate upon the contract or determine it fraudulent or void, it is merely a determination that under the circumstances of the case it is not in furtherance of substantial justice to extend the extraordinary powers of the court to complainant's aid. Nor can a defendant be denied the defence of mistake in a contract because he has not sought its reformation. As to that Prof. Pomeroy, in *2 Eq. Jur.* § *860,* says:

" 'The equitable remedy of the specific enforcement of contracts, even when they are valid and binding at law, is not a matter of course; it is so completely governed by equitable considerations that it is sometimes, though improperly, called discretionary; it is never

granted unless it is entirely in accordance with equity and good conscience. It is therefore a well-settled rule that in suits for the specific enforcement of agreements, even when written, the defendant may by means of parol evidence show that, through the mistake of both or either of the parties, the writing does not express the real agreement, or that the agreement itself was entered into through a mistake as to its subject-matter or as to its terms. In short, a court of equity will not grant its affirmative remedy to compel the defendant to perform a contract which he did not intend to make, or which he would not have entered into had its true effect been understood. What is thus true of mistake is equally true of a defence based upon fraud or surprise. Wherever the defendant's mistake was, either intentionally or not, induced, or made probable or even possible, by the acts or omissions of the plaintiff, then, on the plainest principles of justice, such error prevents a specific enforcement of the agreement. Such co-operation by the plaintiff, however, is not at all essential. A mistake which is entirely the defendant's own, or that of his agent, and for which the plaintiff is not directly or indirectly responsible, may be proved in defence, and may defeat a specific performance.'

"I will advise a decree denying the relief sought by complainant."

*Mr. Harry Heher*, for the appellant.

*Mr Theodore W. Schimpf*, for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, ACKERSON, VAN BUSKIRK—10.

*For reversal*—None.