This is a suit for specific performance. The facts as agreed upon by the parties to the suit are set forth in the defendant's brief as follows:
"On September 20th, 1916, Martin A. Adams leased five lots on Communipaw avenue to The Texas Company for the term of one year with a right of option to The Texas Company to renew the same from year to year for four years after July 1st, 1917. In addition, the lease contained the following option to purchase: The lessor hereby grants unto the lessee the right and option during the term of this lease or any renewal thereof to purchase premises hereby demised for the sum of $10,000 and agrees upon notice of the exercise of such option, which shall be sufficient if sent by mail, postage prepaid, addressed to Martin A. Adams, Lincoln Trust Company, Jersey City, New Jersey, during the term of *Page 501 
this lease or any renewal thereof forthwith upon the receipt of such sum of $10,000, or the deposit thereof in any bank in Jersey City to be paid to such lessor or his heirs or personal representatives upon his delivery of such deed, to execute and deliver to the lessee good and sufficient warranty deed to such premises.
"The lessee, during the term of this original lease, exercised his option to renew his lease for the succeeding year and thereafter successively exercised its option to renew the lease for the full four years additional period. So that before the original lease and the renewals provided therein expired, and on March 24th, 1921, The Texas Company wrote to Martin Adams as follows:
"`We may desire to have our lease extended on the same basis for the same period and with the same option as the lease now in effect, which expires July 1st, 1921. Kindly advise me if such an arrangement would be satisfactory to you so that I can present the matter to the proper authorities for final consideration by them.'
"Mr. Martin Adams replied to this letter on April 1st, 1921, as follows:
"`If the company desires to renew the lease, the rent will be $500 for the five lots 15, 16, 17, 18 19 block 1734, north side of Lincoln Highway or Communipaw avenue, Jersey City, New Jersey, beginning July 1st, 1921. Kindly let me hear from you on this and oblige.'
"To which the company replied on May 12th, 1921:
"`I have your letter of April 1st in regard to the rental which you desire for the coming year. I understand that there are two lots between the property we now occupy and the corner, and we should like to have those lots included in any new lease which is made, and at this figure it would seem to be fair to have this done. Will you kindly advise me if you will agree to this and will also allow our present purchase option to continue covering all the lots. I think if you will agree to this that some satisfactory arrangement can be made at once.'
"To which Mr. Adams, on May 13th, 1921, replied:
"`Yours of yesterday rec'd and contents noted relating to land on Lincoln Highway, Jersey City, N.J. My notification of April 1st *Page 502 
of increased rent in future for your present holdings are based on the ratio I am and have been receiving from your competitor Arthur Halliwell, who handles Standard oil, although you have by far the choice of positions, you being the first to discover the merits of the location, hence my partiality. The two lots you desire also to lease on the corner of Marcy avenue at the Park entrance are of greater value. If you want to buy them or include them in your lease option from year to year, you will have to pay $6,000 to own them outright. I have refused to sell at $5,000. Your rent per month if you desire to control them shall be $25, but I would prefer to leave them out.'
"The company replied to this letter on June 8th, 1921, as follows:
"`This letter, with your letters of April 1st, 1921, and May 13th, 1921, will constitute an agreement for the extension of the term of the lease dated September 20th, 1916, between you and The Texas Company for a further period of one year from and after the first day of July, 1921, with the option to the lessee as set forth in said lease to extend the term thereof from year to year for not exceeding four years more from and after the first day of July, 1922.
"`The description in said lease is altered so as to include all land between the premises now described in said lease and northwesterly side line of Marcy avenue, said rental to be altered so that the amount shall be $800 per annum in place of $300 per annum.
"`The option in said lease is altered so that the option to purchase covers the land now described in said lease and said additional land, and the amount of said purchase price is changed from $10,000 to $16,000.
"`Will you kindly advise me whether you have been married since the execution of the lease in 1916 as in that event I think a new lease will be desirable.'
"To which Mr. Adams replied on June 17th, 1921:
"`Yours of the 8th instant received relating to land lease continuation with additional land fronting northwest corner of Communipaw and Marcy avenues adjoining your present holdings. Continuing the old lease — increased holdings added and new conditions explained should do. One feature of it seems partial to The Texas Company; they bind me for five years and the company for only one year. Send me your altered copy to look over. I am still a widower and sorry for it, and please pardon my tardiness.'
"* * * on June 22d, instead of sending to Mr. Adams an altered lease, the company wrote as follows:
"`I believe the letter which you received from me dated June 8th and your letters to which I refer will be sufficient extension of the *Page 503 
lease. I am sending you copies of your letters of April 1st and May 13th referred to in my letter so that all may be attached to your copy of the lease.'
"Thereafter, the company continued to remain in possession of the property, including the two additional lots, and paid the increased rent, and each year sent Mr. Adams a notice that they would renew the lease for an additional year. Apparently, no other communications passed between the parties during this period until on June 16th, 1926, the complainant wrote Mr. Adams as follows:
"`The Texas Company hereby exercises the option given by you in its lease with you dated September 20th, 1916, and correspondence dated April 1st, 1921; May 13th, 1921, and June 8th, 1921, to purchase the premises therein referred to at Communipaw avenue, Jersey City, N.J., for $16,000.'
"To this letter Mr. Adams made no reply."
It is conceded that specific performance will not be decreed unless the contract be complete, certain and definite. It is therefore unnecessary to cite authorities on this point.
It appears from Mr. Adams' letter of June 17th, 1921, that he objected to one clause of the lease, which bound him for five years and the company for only one, and asked that "your altered copy" be sent him to look over. The company never replied to his objection or sent him the altered copy.
Mr. Adams' letter was in reply to one from the company, which frankly states that the option to purchase in the lease had been altered to cover additional land and the purchase price had been changed from $10,000 to $16,000. It was a copy of a renewal containing these alterations that Mr. Adams said he desired to look over, and one feature of which he criticized, i.e., the binding of the company for one year while he was bound for five. It seems to me, therefore, that in Mr. Adams' view at least something remained to be done before the renewal could be considered complete, that is, his inspection of "your altered copy," to which after consideration he might or might not assent. The contract, therefore, was not complete, definite and certain. *Page 504 
The second point made by the defendant is that no proper tender was made within the time limited in the original contract. That contained a clause providing that defendant should, during the term of this lease or any renewal thereof, on receipt of the purchase price or its deposit in any Jersey City bank, execute a deed. If we assume that the lease was renewed for four years after July 1st, 1922. It expired July 1st, 1926. In April, 1927, the required deposit was made in a Jersey City bank. InWilliams v. Raab, 134 Atl. Rep. 337, Vice-Chancellor Ingersoll said: "The complainant failed to make a proper tender to exercise her option during the term of the lease. Not having exercised her option during that period she cannot, by filing her bill thereafter, enforce the contract."
It is true that on June 16th, 1926, complainant wrote to Mr. Adams saying: "The Texas Company hereby exercises the option given by you." But this is not sufficient. Defendant agreed to give a deed on receipt of a notice during the term of the leaseand on receipt of the money or its deposit during the same period.
I do not think the complainant could notify the defendant that it elected to exercise the option and then neglect to deposit the purchase price until it suited its convenience to do so. This might put defendant to great inconvenience and perhaps tie up his property for an unreasonable length of time. The idea of the option clearly was that if complainant wanted the property it must make payment promptly.
In his bill, paragraph 16, complainant alleges that Mr. Adams waived the tender.
The facts appear to be these. After the notice of June 16th, complainant did nothing until August 30th, 1926, when it deposited $16,000 not in a Jersey City bank, as the option required, but in a Newark bank. Thereafter, defendant engaged counsel, who, on December 16th, 1926, wrote to the complainant that he would waive tender. Defendant repudiated this letter and his counsel stated that he had no authority to write it. Defendant then engaged his present counsel, who filed an answer, setting up failure to make the proper tender. Complainant's solicitor wrote to defendant's *Page 505 
solicitor, stating that counsel first engaged had waived tender, thereupon defendant's solicitor wrote that he would waive tender. This last letter was written without authority from Mr. Adams and he repudiated it. Thereupon, complainant's counsel was informed that failure to tender would be urged at the hearing. Then the deposit was removed from the Newark to the Jersey City bank, on April 26th, 1927.
I do not think the defendant should be estopped from setting up a defense which seemed to him a valid one because his solicitors without his knowledge or consent agreed to do so.
In Strauss v. Rabe, 97 N.J. Eq. (affirmed on the opinion below in 98 N.J. Eq. 700), Vice-Chancellor Bentley said (at p.212): "When a vendor delivers a written contract for the sale of land to an atttorney, and asks the latter to represent him upon the passing of title, without further instructions, and it is known to the purchaser that the contract, by its express terms, has fixed a final, specific day upon which the deed is to be delivered, the purchase-money paid and the other matters in the contract adjusted and concluded, the charter of the agent's powers fixes them, and the purchaser cannot thereafter claim the benefit of any treaty with the agent not found within the contract, either expressly or by necessary implication, unless the act of the agent is either expressly or impliedly ratified by his principal. If it is sought by the purchaser to modify any of the terms of the contract or impose a new one in any material matter affecting the principal's right, the former must, under the cases just cited, make certain, at his own peril, that the agent's authority is sufficient to permit him to perform such act."
The cases referred to by the learned vice-chancellor areCooley v. Perrine, 41 N.J. Law 322; affirmed, 42 N.J. Law 623;Milne v. Kleb, 44 N.J. Eq. 378, and Dowden v. Cryder,55 N.J. Law 329.
It is well settled that specific performance is not a matter of strict legal right, but one appealing to the discretion of the court. I think, therefore, for the reasons just stated, that the bill should be dismissed, and I will advise a decree accordingly. *Page 506