101 A.2d 339 (1953)
GLENN et ux.
v.
TIDE WATER ASSOCIATED OIL CO.
Court of Chancery of Delaware, New Castle.
December 9, 1953.
Henry A. Wise, Jr., of Wise & Suddard, Wilmington, for plaintiffs.
H. James Conaway, Jr., of Hering, Morris, James & Hitchens, Wilmington, for defendant.
*340 BRAMHALL, Vice Chancellor.
Plaintiffs are husband and wife and are the owners and lessors of a piece of land at 1814 Delaware Avenue, in the City of Wilmington, upon which is located a gasoline service station. On May 1, 1939, plaintiffs entered into a written agreement with defendant, under the terms of which plaintiffs leased to defendant the property in question for a term of three years at a rental of one cent per gallon for each gallon of defendant's gasoline sold on the premises during the term with a minimum rental of $60 per month for each full year of the term of the lease. Defendant was given the option to extend the term of the lease for four additional periods of one year each upon the same terms and conditions. Plaintiffs further gave to defendant an option to purchase said property during the term of the lease or any extension thereof for the price of $16,000. Desiring to borrow money by reason of financial difficulties, plaintiffs found it advisable to enter into a new lease with defendant for a flat monthly rental, the rent to be assigned *341 to the bank from which they were making a loan. Accordingly, on October 8, 1941, plaintiffs and defendant executed a new lease similar to the lease executed in 1939 with the exception that the term was for five years with right of renewal for five additional years, the rental was for the flat sum of $100 per month and the purchase price under the option was $8,000. All parties not only executed the new lease but initialed the clauses making the changes from the 1939 lease referred to. Plaintiffs were represented by counsel during the negotiations and at the time of settlement.
Plaintiffs testified that immediately prior to their execution of the lease agreement plaintiff Charles A. Glenn inquired of the representatives of defendant as to whether or not the agreement was the same in all respects as the agreement executed in 1939. Plaintiffs testified that upon being informed that it was, they thereupon signed the agreement. Although plaintiffs were represented by reputable counsel, who was present at the time, plaintiffs' attention was not called to the fact that such statement, if made, was not correct. Plaintiffs further testified that they had no knowledge that the purchase price under the option was $8,000 instead of $16,000 until they were so informed by their counsel approximately a year later.
On July 16, 1951, plaintiffs mailed to defendant by registered mail to its New York address a notice to defendant to vacate and quit the premises on November 1, 1951. Defendant notified plaintiffs by letter dated October 26, 1951, of its desire to exercise its option to purchase the property. The renewal term under the lease expired on October 31, 1951. On December 5, 1951, a tender was made upon plaintiffs on behalf of defendant of the purchase price under the option, together with deed to be executed by plaintiffs. This tender was refused. On December 14, 1951, after prior notice thereof to plaintiffs, another tender was attempted by defendant by tendering the purchase price and deed. However, neither plaintiffs nor anyone on their behalf appeared.
Defendant objected to the introduction in evidence of the 1939 lease and to the testimony of plaintiffs with reference to the conversation between plaintiffs and the representatives of defendant with reference to the terms thereof, contending that the testimony of plaintiffs constituted a violation of the parol evidence rule. Plaintiffs' testimony related entirely to the conversation which took place immediately prior to the execution of the contract. Plaintiffs contend that they were misled by the statement alleged to have been made by defendant's representative to the effect that there had been no change therein. Plaintiffs further assert that in making the inquiry as to whether or not there had been any change in the contract they definitely had in mind the clause relating to the option to purchase.
It is not clear as to what defendant's representatives understood by this question. It is not disputed that changes had been made in the contract other than the change in the amount of the purchase price under the option. Although the contract had been prepared at the request of defendant, it had been in the possession of plaintiffs' counsel for examination and approval for approximately two weeks before the time of settlement. The fact that no reference as to any of these changes was made to plaintiffs, either by their counsel or by defendant's representatives, is unexplained. Plaintiffs explain their failure to examine the contract which was before them by asserting that they relied upon the statements made on behalf of defendant and by the further statement that they would not have understood the agreement had they read it. Other witnesses called who were present at the time, including the then counsel for plaintiffs, were not helpful. They had no recollection relative to this conversation.
In my opinion the testimony is admissible. While there is no evidence of actual fraud, there is evidence of a misrepresentation. Even innocent representations as to material circumstances are sufficient to refuse specific performance if the plaintiffs were induced to sign the contract *342 by reason thereof. Eastern States Petroleum Co. v. Universal Oil Products Co., 24 Del.Ch. 11, 3 A.2d 768, 775; Williams v. M. E. Blatt Co., 95 N.J.Eq. 326, 123 A. 362; Warner v. Giron, 141 N.J.Eq. 493, 58 A.2d 98; Wagner v. Allen, 184 Iowa 894, 169 N.W. 143; LaCourse v. Kiesel, 366 Pa. 385, 77 A.2d 877. See also Corbin on Contracts, Vol. 5, Sec. 1167, p. 724.
The testimony offered relates entirely to the circumstances surrounding the execution of the agreement. It does not in any manner change or vary the terms of the agreement itself, but gives plaintiffs' explanation for their execution of the agreement containing the option clause for $8,000. The time, place and circumstances of the execution and the execution itself of a written instrument may be proved by parol. Plunkett v. Dillon, 4 Del.Ch. 198. See Gluckman v. Holzman, 29 Del.Ch. 458, 51 A.2d 487.
I conclude that the testimony of plaintiffs as to the circumstances surrounding the execution of the contract is admissible.
But defendant contends that even if I should consider the testimony of plaintiffs admissible and even if I should accept this testimony in full, plaintiffs, by their failure to act to reform or to cancel the agreement and by accepting the benefits thereof for a period of approximately nine years, have accepted the agreement and cannot now interpose an alleged misrepresentation on the part of defendant when defendant has called upon plaintiffs to comply with the terms and conditions to be performed by them.
The agreement was drawn in order to permit plaintiffs to borrow money by making an assignment thereof. The rental was changed to a definite sum and increased to $100 per month. The term of the lease was extended to a period of five years. Plaintiffs admit that approximately a year after the execution of the agreement they were informed by their then counsel that the agreement provided for an absolute option on the part of defendant to purchase the premises for the sum of $8,000. Since that time, for a period of approximately nine years, plaintiffs have not complained of this alleged misrepresentation, but, on the contrary, have accepted the benefits thereof.
A person who has been misled, upon learning the truth, is required with reasonable diligence to disaffirm the contract or to give the other party thereto an opportunity of rescinding it and of restoring both of them to their original position. He will not be permitted to continue to derive all possible benefits from the transaction and then, when he is called upon to comply, claim to be relieved from his own obligations on the ground of a misrepresentation of the other party made at the time of the execution of the agreement. Having conducted himself as though the transaction were still subsisting and binding he has waived all benefit of and relief from such misrepresentation. See cases cited in 3 Pomeroy's Equity Jurisprudence (5th Ed.) Sec. 897, p. 530, n. 2.
Plaintiffs having elected the course of silence and inaction when it was their duty to speak or to act, equity will now withhold its aid. Bay Newfoundland Co., Ltd. v. Wilson & Co., Inc., 26 Del.Ch. 270, 28 A. 2d 157, affirmed 27 Del.Ch. 344, 37 A.2d 59, 63. Even if plaintiffs' actions should not amount to acquiescence, their acceptance of the contract for a period of approximately nine years after they ascertained that it contained an option to purchase for the sum of $8,000 and the acceptance of the benefits thereof constituted laches. Wright v. Scotton, 13 Del.Ch. 402, 121 A. 69, 31 A.L.R. 1162; Bovay v. H. M. Byllesby & Co., 25 Del.Ch. 1, 12 A.2d 178, 190; Martin v. Martin, Del.Ch., 74 A. 864.
Plaintiffs have offered no justification for their silence and for their acceptance of the benefits of the agreement. I must therefore assume that even though they found the option clause in the agreement not to be in accordance with their understanding of *343 what it was supposed to be, they accepted the agreement in its entirety, including the option clause.
I conclude that plaintiffs are prevented from asserting their claim as to the alleged misrepresentation by defendant's agent by reason of acquiescence and laches.
Was defendant obliged to tender the purchase price prior to the termination of the lease? This question is more troublesome. The option clause in the lease provides as follows:
"Lessor hereby grants to Lessee the further option to purchase the demised premises and all buildings, improvements and equipment thereon owned by Lessor at any time during the term aforesaid or any extension thereof, upon the following terms and conditions:
"(a) Lessee shall give Lessor written notice of Lessee's election to exercise such option directed by registered mail to Lessor at Lessor's aforesaid address, or delivered to Lessor personally.
"(b) The purchase price shall be Eight Thousand ($8,000.00) Dollars.
"(c) Upon completion of Lessee's title examination, if title is satisfactory to Lessee, Lessee shall tender the purchase price to Lessor, and Lessor at the time of such tender shall deliver to Lessee a good and sufficient warranty deed and bill of sale conveying said premises and all buildings, improvements and equipment thereon owned by Lessor to Lessee, in fee simple, free and clear of all liens, encumbrances and restrictions whatsover. All proper adjustments shall be made at the time of such conveyance."
It will be noted that the manner in which the option shall be exercised is provided for in the lease. It is stipulated therein that defendant shall give to the plaintiffs written notice of its desire to exercise the option and that upon completion of title examination on the part of defendant, if the title is then found to be satisfactory to defendant, defendant shall then tender the purchase price to plaintiffs, at which time plaintiffs shall deliver to defendant a good and sufficient warranty deed in fee simple for the premises, free and clear of all liens, encumbrances and restrictions whatsoever. Defendant notified plaintiffs of its desire to exercise the option prior to the date of the expiration of the lease. In that notice defendant requested plaintiffs to give it the name and address of plaintiffs' counsel, so that upon the completion of the title examination defendant might arrange with plaintiffs' counsel for a date, time and place of closing. Defendant received no reply to that letter. Tender of the purchase price was made by defendant upon plaintiffs on December 5, 1951, which was after the expiration of the term of the lease. Plaintiffs contend that, since the tender was not made prior to the termination of the lease, defendant cannot enforce the option.
The option to purchase contained in a lease is equivalent to a continuing offer to sell, to which the notice of the election to purchase is an acceptance and the two constitute a completed contract of sale as of the date of the notice. Thompson on Real Property, Perm. Ed., Vol. 3, Sec. 1330, p. 494. The option in this case did not provide for the exercise thereof by a tender of the purchase price. That and the tender of the deed were to depend upon the examination of the title on behalf of defendant. So long as neither party made tender of the deed, on the one hand, or payment on the other, no one was in default and under the weight of authority either party could make proper tender and insist upon specific performance at any time unless barred by laches. Smith v. Gibson, 25 Neb. 511, 41 N.W. 360; McLean v. Neal, 29 Ga.App. 9, 113 S.E. 63; Durepo v. May, 73 R.I. 71, 54 A.2d 15, 172 A.L.R. 429.
The fact that in the option clause it was provided first that notice should be given and, secondly, for tender after an examination of the title by defendant refutes, of itself, plaintiffs' contention that a tender was necessary at the time of the exercise of the option. If plaintiffs were insisting *344 that settlement be made prior to the termination of the lease, which was within a matter of five or six days, it should have communicated with defendant in response to defendant's letter, since defendant requested information essential to the completion of the settlement. Defendant's tender was made on December 5th, a matter of approximately five weeks after the termination of the lease. Although the option clause provided for written notice of election to exercise and for an opportunity to defendant to examine the title, no time limit was set for such examination. In the absence of such time limit it will be presumed that the parties contemplated a reasonable time. Smead v. Lamphear, 87 Vt. 1, 86 A. 1005; Texas Co. v. Crown Petroleum Corp., 137 Conn. 217, 75 A.2d 499; Detwiler v. Capone, 357 Pa. 495, 55 A.2d 380. A period of approximately five weeks within which to examine the title and make settlement is unquestionably a reasonable time. Texas Co. v. Adams, 101 N.J.Eq. 500, 138 A. 655, reversed 141 A. 762.
I conclude that defendant complied with the terms of the option by its written notice dated October 26, 1951.
Plaintiffs assert that the option agreement constituted such an unconscionable bargain as to be unenforceable. The testimony with reference to the purchase price set forth in the option is very meager and what there is is unsatisfactory. The purchase price as set forth in the 1939 agreement was $16,000; the purchase in the 1941 agreement was $8,000. No satisfactory explanation is given for the reduction in price. Apparently such evidence was not available. Plaintiffs say that at the time they signed the agreement they relied upon the statement of defendant's agent that there had been no change in the contract. Yet the fact remains that plaintiffs knew that there had been some changes. The agreement was before them to read, if they so desired. It had been in possession of plaintiffs' counsel, for his examination and approval, for approximately two weeks. It is therefore significant that plaintiffs' counsel did not correct such misstatement, if made, at the time of the execution of the agreement. No evidence is offered as to the value of the property in question at the time of the execution of the agreement. Plaintiffs, according to their own testimony, learned about the purchase price as set forth in the option about a year after the execution of the agreement, when they were so informed by their counsel. Although they consulted counsel, they failed to notify defendant of the alleged misrepresentation or to take any action to cancel or reform the agreement. Plaintiffs had the burden of proving their contention that the purchase price was inadequate. They failed to meet that burden.
Mere inadequacy of consideration, in the absence of any unfairness or overreaching, does not justify a denial of the right of specific performance where in other respects the contract conforms with the rules and principles of equity. See cases cited in 65 A.L.R. 86, Annotation. A court of equity does not attempt to weigh the actual value nor to insist upon the equivalent in contracts, when each party has equal competence. Lee v. Kirby, 104 Mass. 420; Lawson v. Mullinix, 104 Md. 156, 64 A. 938. In view of these circumstances, I do not find that the option clause of the agreement was so harsh and unconscionable as to be unenforceable.
I conclude that the lease with option to purchase, dated October 8, 1941, is a valid and enforceable agreement, and that the option to purchase is valid in all respects and that defendant is entitled to a conveyance of the property by plaintiffs in accordance with the terms and conditions thereof.
An order will be signed on notice in accordance with this opinion.