In re BRANDYWINE VOLKSWAGEN, LTD.

Superior Court of Delaware,
New Castle.

April 30, 1973.

Jeffrey M. Weiner, Dept. of Justice, Wilmington, for appellant.

Edward Z. Sobocinski, and Joseph M. Kwiatkowski, Wilmington, for appellee.

TAYLOR, Judge.

This is an appeal[1] from the decision of the Consumer Affairs Board [Board] which vacated a cease and desist order issued by the Director of the Division of Consumer Affairs [Director].

On August 10, 1971 Martin J. Lynch [Lynch] purchased a 1970 Volkswagen squareback from Brandywine Volkswagen Ltd. [Brandywine]. During the negotiation for the purchase of the Volkswagen, Lynch noted that the mileage on the odometer was 13,706 and commented to the salesman about the mileage reading. The Brandywine salesman agreed that it was a low mileage for a 1970 Volkswagen. Lynch was looking for a car with low mileage and good performance. Lynch bought the Volkswagen. Approximately four months after the purchase, he began having trouble with the car. An examination of the ownership records of the vehicle indicated that the car's mileage exceeded the odometer reading by at least fifty percent. Proceedings were instituted with the Division of Consumer Affairs against Brandywine.

The Board found that Brandywine purchased the Volkswagen at the Manheim Auto Auction in Pennsylvania and that it had an odometer reading of less than 13,076 miles. Brandywine received a New York form designated MV–50 in connection with the purchase. Brandywine filed this form with the Delaware Division of Motor Vehicle with its application for Delaware registration for the car. The Board found that there was "no evidence of intent to misrepresent in any way the allegations set forth in the Order."

This case turns on the interpretation of 6 Del.C. § 2513. Sections 2511 through 2527 were enacted in 1965 by Chapter 46, Volume 55, Laws of Delaware, which was entitled "An act to amend Title 6, Delaware Code to protect the consumer against fraudulent and deceptive merchandising practices."[2] § 2512, which was also included in the Act, contains two provisions which are significant in the interpretation of the sections of the Act. The first sentence states that the purpose of the Act is "to protect consumers and legitimate business enterprises from unfair and deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this Statute." The second states that the Act "shall be liberally construed and applied to promote its underlying purposes and policies."

§ 2513(a) reads:

"(a) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or dam-

1. Statutory authority is founded in 29 Del. C. § 8613.
2. A comprehensive review of state laws on this subject is found in 46 Tulane Law Review 724–60. New impetus for consumer protection at the federal level was given by the United States Supreme Court decision in F.T.C. v. Sperry & Hutchinson, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972).

aged thereby, is declared to be an unlawful practice."[3]

██ Brandywine had been in possession of information that the car's mileage was at least 21,000, but there is no evidence that the salesman knew of this when he talked to Lynch. A principal is liable for the fraud of an agent even though the fraud was committed without the knowledge, consent or participation of the principal if the act was done in the course of the agent's employment and within the apparent scope of the agent's authority. 37 Am.Jur. 2d 413, Fraud & Deceit, § 312. The mere fact that the agent believed the statement to be true or was unaware of the falsity of the statement is not a defense to be asserted by the principal, if the principal is possessed of the knowledge or is chargeable with it. ibid, p. 414. Therefore, the untrue statement must be treated as being made by Brandywine and must be tested against the information which Brandywine had received.

The common thread which runs through actions of fraud or deceit at law, actions predicated upon misrepresentation in equity, and actions under 6 Del.C. § 2513 is the making of a false or misleading statement or the concealment, suppression or omission of information, thereby creating a condition of falseness. In this case the undisputed testimony establishes a direct representation that the odometer reading was correct and an implied representation that Brandywine had no information causing it

to doubt the authenticity of the odometer reading.[4] The representations were false.

██ One of the necessary elements to recovery in a fraud action at law [5] is that a person who makes a false statement knew that the statement was untrue or made the statement "with a reckless indifference to the truth of the matters and without knowledge of their truth". Nye Odorless Incinerator Corp. v. Felton, 5 W. W.Harr. 236, 162 A. 504, 511 (1931); Barni v. Kutner, 6 Terry 550, 76 A.2d 801, 806 (1950). The general rule is that a person is chargeable with a false statement if it was made under such circumstances as to raise a presumption of his knowledge of the falseness. 37 Am.Jur.2d 261, Fraud & Deceit, § 197. This principle applies where a person has a duty to know the truth or where the facts are peculiarly within the knowledge of the person making the statement. ibid, p. 267, § 201. This element is present in this instance.

██ The Board found that Brandywine had no intent to misrepresent. It is not clear from the phrase used by the Board whether the Board intended to find (1) that Brandywine did not intend to make the statement, or (2) that Brandywine made the statement but did not intend to make an untrue statement, or (3) that Brandywine by making the statement did not intend to deceive Lynch. There is nothing in the record indicating that Brandywine did not intend the response given by its agent. From the foregoing review

---

3. Forbidden acts are: "deception", "fraud", "false pretense", "false promise", "misrepresentation", and "concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission."

4. With respect to the sales conversations between Lynch and the Brandywine's salesman before the sale, Lynch testified that he observed to the salesman "That's low mileage for a '70", and the salesman replied "Yes". Later, upon examination by the Chairman of the Consumer Affairs Board, Lynch testified he asked the salesman "How many miles are on this car? . . . Is this the true reading?" and the salesman's answer was "Yes".

5. To support a fraud action at law there must be the following: (1) material representation, (2) which was false, (3) known by the maker to be false or made in reckless indifference to the truth, (4) made with intent to induce other party to act, and (5) a misleading of the other party in reliance upon which he acted and was damaged. Nye Odorless Incinerator Corp. v. Felton, 5 W.W.Harr. 236, 162 A. 504, 510 (1931).

of the law, it is clear that the mere fact that Brandywine may not have intended to make an untrue statement is not a valid defense since it was chargeable with the information which it had received. Assuming the Board meant the third alternative, the question to be decided is whether an intent to deceive is essential.

In a fraud action in a court at law, in order to warrant recovery, it must be established that the person making the representation did so with intent to defraud. Nye Odorless Incinerator Corp. v. Felton, supra. The misrepresentation may be as to a fact peculiarly within the maker's own knowledge thereby creating a delusion or such as to lull the suspicion of a careful man inducing him to forego further inquiry. Kent County R. R. Co. v. Wilson, Del.Super., 5 Hous. 49, 50 (1875). It has been held in some jurisdictions that intent to defraud or deceive may be inferred from the making of an untrue representation by one who makes the representation recklessly as of personal knowledge without regard to whether or not it is true or under circumstances in which one has in his possession the means of knowledge. 37 Am.Jur.2d 611–12, Fraud & Deceit, § 446.

Although intent to defraud or deceive is an essential element to relief at law, it is not essential to equitable relief if a false statement has been made. Holley v. Jackson, 39 Del.Ch. 32, 158 A.2d 803 (1959); 37 Am.Jur.2d, 292–3, Fraud & Deceit, § 220. In equity, misrepresentation may be founded merely upon a false statement even though its falseness is not known to the maker of the statement.

Eastern States Petroleum Co. v. Universal Products Co., 24 Del.Ch. 11, 3 A.2d 768, 775 (1939); In re Construction Materials Corp., D.Del., 18 F.Supp. 509, 526 (1936). Misrepresentation does not require legal fraud. Glenn v. Tide Water Associated Oil Co., 34 Del.Ch. 198, 101 A.2d 339 (1953). In equity, it has been held that a person may be chargeable if he makes an untrue statement of fact and has no knowledge that the statement is true, even though he believed it to be true, 3 Pomeroy's Equity Jurisprudence 490, § 887, or if one has a duty of knowing the truth and makes an untrue statement, ibid, p. 496, § 888a, or if the untrue statement results from one's own forgetfulness. ibid.[6]

Since a court of law and a court of equity test false statements according to different rules in determining whether a wrong has been committed entitling a person to relief, it is necessary to resort to interpretational aids found in the statute to determine which rule should be applied under this statute. The stated objective of the statute is "to protect consumers and legitimate business enterprises and from unfair and deceptive merchandising practices." The legislature further provided that the statute should be "liberally construed and applied to promote its underlying purposes and policies." Since the rule more favorable to the consumer is the equity rule, the quoted legislative intent requires that the equity rule be used in interpreting the statute.[7] A second indicia that the legislature intended that the statute be governed by the equity rule rather than the law rule is the remedy provided in the statute. The statute authorized enforcement

6. It should be noted that the consolidation of law and equity in many jurisdictions has tended to dull the historic distinctions between law and equity in the treatment of misrepresentation.

7. It has been held that the phrase "deceptive device or contrivance" as used in the Securities Exchange Act of 1934, and as applied by the regulations thereunder, is

not limited by common law standards of fraud and deceit. Speed v. Transamerica Corp., D.Del., 99 F.Supp. 808, 831 (1951), affd. (3 Cir.) 235 F.2d 369 (1956); Norris & Hirshberg, Inc. v. S.E.C., 85 U.S.App.D.C. 268, 177 F.2d 228, 233 (1949). This holding was compelled in part by the legislative intent that an objective of the statute was the protection of the public. ibid.

proceedings in the Court of Chancery to be brought by the Attorney General.[8]

The wording of 6 Del.C. § 2513 indicates that the legislature did not intend that the definition of unlawful practices would merely parallel common law fraud. It provided that it would apply regardless of whether or not a person has been misled, deceived or damaged; under the common law it is required that a person be misled, or deceived and be damaged. Moreover, it specifically required in connection with concealment, suppression or omission, that there be "intent that others rely upon such concealment, suppression or omission". This is the only reference to "intent". This reference is not to intent to misrepresent or intent to make a deceptive or untrue statement, but intent that others rely thereon. If the legislature had meant to follow the requirements for common law fraud, this statutory reference to intent was superfluous.

■ The Court holds that the Board did not correctly apply the statutory standard in holding that Brandywine did not commit an unlawful practice under the statute because there was no evidence of intent to misrepresent. The Board appears to equate this proceeding to an action at law by the buyer to recover damages for a fraudulent transaction. The Court holds that the statute is not so confined.

■ The record contains no evidence to refute or weaken Lynch's testimony concerning his questions about the mileage of the car and Brandywine's salesman's responses. The record further is undisputed that the car's mileage was at least fifty per cent higher than that registered on the odometer. The record further is undisputed that the form containing the mileage information had been in Brandy-wine's possession and had been used by Brandywine to obtain Delaware title. Hence, the undisputed record shows an untrue statement by Brandywine in connection with an anticipated sale and Brandywine's having had within its possession material from which the untruth of the statement could have been ascertained. Upon this record, as to the facts just recited, the Board could have made no supportable findings other than those recited above. See 30 Am.Jur.2d 236–7, Evidence § 1084.[9] These facts constitute an unlawful practice under 6 Del.C. § 2513.

Accordingly, the decision of the Board is reversed and this matter is remanded to the Board for further proceedings consistent with this decision.

It is so ordered.

---

8. Additional enforcement powers were thereafter vested in the Division of Consumer Affairs, Department of Community Affairs and Economic Development by 58 Del.Laws Ch. 336, but the powers described above were retained.

9. A finding by an administrative board must be supported by substantial competent evidence. Johnson v. Chrysler Corp., Del.Supr., 213 A.2d 64, 66 (1965); Children's Bureau of Delaware v. Nissen, 3 Terry 209, 29 A.2d 603, 609 (1942).