James R. TAYLOR, Appellant,

v.

UNITED STATES, Appellee.

No. 82–1009.

District of Columbia Court of Appeals.

Argued Sept. 20, 1983.

Decided Dec. 29, 1983.

John A. Shorter, Jr., Washington, D.C., for appellant.

Ava J. Abramowitz, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, and Elliott R. Warren, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before KERN and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellant seeks a reversal of his conviction of unlawful possession of a narcotic substance, D.C.Code § 33–502(a) (1981), claiming that the trial court: (1) deprived him of his Sixth Amendment right to a speedy trial, and (2) unduly restricted his use of peremptory challenges during *voir dire*. We affirm.

I

■ Although arrested on November 12, 1979, appellant was not put on trial until June 30, 1982. Consequently, he now claims that because of the thirty-one month delay, his rights under the speedy trial clause of the Sixth Amendment were violated. Under the circumstances disclosed by the record, this argument is without merit. While the right to a speedy trial is a fundamental right guaranteed by the Sixth and Fourteenth Amendments, *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967), a showing of more than mere delay is necessary in order to establish a violation. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). In *Barker,* the Supreme Court formulated a balancing test and identified four factors to be assessed in analyzing a speedy trial claim. They are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right, and (4) the resulting prejudice to the defendants. *Id.* at 530, 92 S.Ct. at 2192; *United States v. Calhoun,* 363 A.2d 277, 278–79 (D.C.1976).

A. *Length of the Delay*

■ Once an individual becomes an accused, either by indictment, complaint or arrest, his right to a speedy trial attaches. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Kramer,* 286 A.2d 856, 859 (D.C. 1972).

■ Where the delay in bringing a defendant to trial exceeds one year, a *prima facie* speedy trial claim is established. *Head v. United States,* 451 A.2d 615, 620 (D.C.1982). In the instant case, the total delay of thirty-one months between arrest and trial is *prima facie* evidence in support of appellant's speedy trial claim. Thus, appellant has succeeded in satisfying the first factor of the *Barker* test. Nevertheless, a significant time lapse, alone, will not necessarily violate the speedy trial clause. *See* *Branch v. United States,* 372 A.2d 998 (D.C. 1977). The delay must still be evaluated in light of the other three *Barker* factors. *Bowman v. United States,* 385 A.2d 28, 30 (D.C.1978).

B. *Reasons for the Delay*

An examination of the record reveals that between the date of appellant's arrest and the final trial date, thirty-one months had lapsed. We note first that approximately nineteen months out of this total delay are technically charged against the government. Nevertheless, seventeen of the nineteen month delay was the result of a variety of neutral causes including preliminary hearing, indictment and arraignment (November 12, 1979 through May 13, 1980), court congestion (January 30,

1981 through February 13, 1981 and February 24, 1981 through April 24, 1981), the recusal of the original judge (April 28, 1981 through July 23, 1981), and the appointment of a new judge, a continued suppression hearing and the retention of new counsel for appellant (July 23, 1981 through December 7, 1981).

An assorted number of continuances, during the remaining two months, were granted at the request of the government. (January 6, 1981 through February 24, 1981; April 24, 1981 through April 28, 1981; June 14, 1982 through June 15, 1982). The balance of the thirty-one month delay was comprised of six months of mutually requested continuances (May 13, 1980 through June 2, 1980 and June 9, 1980 through January 6, 1981) and six months of continuances granted at the request of the defense (November 20, 1979 through November 21, 1979; June 2, 1980 through June 5, 1980; January 23, 1981 through February 13, 1981; December 7, 1981 through June 14, 1982).

◼ In evaluating the reasons for the delay, different weights should be assigned to different reasons. *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. For instance, where delays have been caused by bad faith on the part of the government in order to harass the accused, a deprivation of a speedy trial right is more easily demonstrated. *Bethea v. United States,* 395 A.2d 787, 791 (D.C.1978). Conversely, "neutral" or "institutional" delays, while chargeable to the government, typically have been afforded less weight in the *Barker* analysis, *Parks v. United States,* 451 A.2d 591, 601 (D.C.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983), and "may be easily outweighed by an inadequate assertion of the speedy trial right or a low threshold of prejudice." *Bethea v. United States, supra,* 395 A.2d at 791. In the instant case, the majority of time chargeable to the government, seventeen out of nineteen months, was taken up with various neutral and institutional delays. The government should not be fully blamed for the inevitable delays which are inherent in the proper and deliberate functioning of the judicial system. *Bowman v. United States, supra,* 385 A.2d at 31. This is particularly true where, as in the case at bar, the government never deliberately sought a continuance in order to gain a tactical advantage or to harass the appellant. We should not, and we do not, weigh this period of delay heavily against the prosecution. Thus, while the thirty-one month delay appears to be somewhat excessive, we are not persuaded that it constituted an unreasonable delay within the purview of the *Barker* criteria.

**C.** *Assertion of the Defendant's Rights*

◼ Appellant did not formally assert his right to a speedy trial until September 4, 1981, almost twenty-two months after his arrest on November 12, 1979. While such assertions usually are accorded "strong evidentiary weight" in determining a speedy trial claim, *Barker v. Wingo, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93; *see also Bond v. United States,* 233 A.2d 506, 512–13 (D.C.1967), appellant's long silence in this case greatly diminished its significance here.

**D.** *Prejudice*

The final factor, prejudice to the appellant, is assessed in light of the three specific interests which the speedy trial clause seeks to protect: (1) preventing undue and oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the accused's defense will be impaired. *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193; *Head v. United States, supra,* 451 A.2d at 621.

◼ In the instant case, appellant was released on bond immediately after his arrest. Thus, he cannot claim prejudice due to pretrial incarceration. Appellant also claims that he suffered physical anxiety due to the delay. Specifically, he alleges that his hospitalization for a stomach disorder and pancreatitis was a direct result of his

pending case. Appellant, however, offers no convincing proof that his ailments were in any way induced by the delay. A bare assertion that one has been upset or concerned about a pending criminal prosecution is not sufficient. *See United States v. Jones,* 173 U.S.App.D.C. 280, 298, 524 F.2d 834, 852 (1975). It does not escape the attention of this court that the appellant has a criminal record which dates back to 1955. Consequently, it is unlikely that at this late stage in appellant's life, the prospect of a pending criminal prosecution would result in such acute physical maladies.

In his final attempt to prove prejudice, appellant claims that the death of two defense witnesses and the faded memories of other witnesses hampered the preparation of his defense. We are not impressed by this argument. It is insufficient for a defendant merely to assert that a witness, who has now become unavailable, was necessary to the preparation of his defense. *Reed v. United States,* 383 A.2d 316, 320 (D.C.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978). An appellant must offer some support for his assertion that the absence of these witnesses actually prejudiced his defense. *Id.* In the instant case, appellant made no proffer to the court of any evidence respecting the potentially exculpatory testimony that these witnesses would have delivered. We must conclude, therefore, that appellant failed to offer substantial evidence to support his claim of prejudice.

■ While the thirty-one month delay between appellant's arrest and his trial is admittedly undesirable, we conclude that the four-pronged *Barker* analysis establishes that appellant was not denied his Sixth Amendment right to a speedy trial. We affirm the trial court's denial of appellant's motion to dismiss on Sixth Amendment grounds.

## II

■ Appellant also argues that the *voir dire* procedures employed by the trial judge unfairly impaired the defense's statutory right to make peremptory challenges. D.C.Code § 23–105(a) (1981); Super.Ct. Crim.R. 24(b). The relevant facts are undisputed.

At the start of the *voir dire,* the judge informed both sides that they would each be entitled to ten peremptory challenges as provided under Rule 24(b).[1] Twelve individuals were then selected by lot from the panel and were seated in the jury box. The government and the defense began to exercise their peremptory challenges, alternating, one at a time, with the government proceeding first.

After each side had struck seven jury members, the government indicated that it was satisfied with the jurors then seated and would pass on Juror No. 8. The presiding judge then announced that a pass would not constitute a strike. Counsel for the defense claims that this procedure permitted the prosecutor to accumulate his remaining challenges and unfairly shape the jury. Moreover, appellant asserts that the trial court erred in not advising the parties of such a rule at the outset of the *voir dire.* While this would perhaps have been the better practice, we cannot agree that the error, if any, was prejudicial.

---

1. Rule 24(b) provides, in part:

 All *peremptory challenges shall be made at the bench.* If the offense charged is punishable by death, each side is entitled to twenty peremptory challenges. If the offense charged is punishable by imprisonment for more than one year, each side is entitled to ten peremptory challenges. If the offense charged is punishable by imprisonment for not more than one year or by fine or both, each side is entitled to three peremptory challenges. If there is more than one defendant, or if a case is prosecuted both by the United States and the District of Columbia, the Court may allow additional peremptory challenges and permit them to be exercised separately or jointly, but in no event shall one side be entitled to more peremptory challenges than the other. The prosecution shall be called upon to make the first peremptory challenge with each side proceeding in turn thereafter.

The right to a specific number of peremptory challenges and the manner in which they are to be exercised is not constitutionally mandated. Nevertheless, the criminal defendant's right to challenge a prospective juror without cause is recognized as "one of the most important of the rights secured to the accused." *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894).

The District of Columbia has codified the accused's right to make peremptory challenges in Superior Court Criminal Rule 24(b). This rule secures the right to challenge jurors without cause. It only prescribes the manner in which the right is to be exercised insofar as it provides that the prosecution exercise the first peremptory challenge with each side proceeding in turn thereafter. Traditionally, the manner of conducting a *voir dire* has been relegated to the sound discretion of the trial court, and its decision will not be disturbed on appeal unless the accused was denied the full and unrestricted exercise of his right to make peremptory challenges. *Carr v. Watts,* 597 F.2d 830 (2d Cir.1979); *United States v. Turner,* 558 F.2d 535, 538 (9th Cir.1977). *See also Pointer v. United States, supra,* 151 U.S. at 407–08, 14 S.Ct. at 414. In the case at bar, the record does not support appellant's claim that the court's manner of conducting the *voir dire* unduly restricted the exercise of his right to make peremptory challenges.

As pointed out above, after the seventh round of challenges, the court informed both sides that a pass would not count as a strike. The *voir dire* then continued until the jury box was filled. Appellant claims that this procedure prevented his full and unrestricted exercise of his peremptory challenges because a juror was seated who the defense could not strike. We disagree. After the seventh round of challenges both sides were equally free to pass, if they so desired. In fact, the record reveals that the defense did elect to pass on the eighth round of challenges. The defense then proceeded to fully exhaust its remaining three challenges. In our view, nothing about the *voir dire* procedure prevented appellant's full and unrestricted exercise of his ten peremptory challenges.

Appellant contends further that it was unfair and prejudicial for the government to have placed jurors on the panel without the defense having had an opportunity to challenge. This, however, was not the result of any unfair *voir dire* practices employed by the trial court. Rather, it appears to be a by-product of the alternating jury box system authorized by Rule 24(b). Under this method, twelve *venire* members are selected by lot. They are seated in the jury box and counsel for each side begins to exercise challenges for cause as well as his allotted number of peremptory challenges in some pattern of prescribed alternation. When both sides have exhausted their respective challenges, the twelve individuals then seated in the jury box are sworn in as members of the jury. *United States v. Blouin,* 666 F.2d 796, 798–99 (2d Cir.1981). As a result of this alternating pattern of challenges, each side must accept at least one juror whom he has not had an opportunity to challenge.

Appellant claims that the failure of the trial court to give advance notice of the peremptory challenge system to be used was unfair and prejudicial. While the trial court has a great discretion in the manner in which to conduct a *voir dire,* we advise trial courts to apprise the parties of the rules which will govern the jury selection prior to the start of the process. *See United States v. Pimentel,* 654 F.2d 538, 541 (9th Cir.1981). In the instant case, however, we find that the oversight of the trial judge was harmless and did not warrant reversal. The record reveals that at the start of the eighth round, the trial court announced that a pass would not count as a strike. We note that at the time of the announcement, the government and the defense counsel had exercised seven strikes each. Thus, even though the announcement was made midway through the exercise of peremptory challenges, it came at a time when both

sides were in parity. Therefore, in effect, it was virtually the same as if it had been made at the start of the proceeding. Appellant argues that had the defense known of the trial judge's policy, it likewise, would have passed in order to store up some of its challenges. We note, however, that the prosecution could also have used a similar strategy of accumulating challenges. In doing so, of course, either side would run the risk that the other would also have announced that it was satisfied, thus concluding the jury selection process. We hold, therefore, that on these facts the error, if any, did not render the proceedings so fundamentally unfair as to require reversal.

*Affirmed.*