Raymond L. SANDERS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 85–48, 87–921.

District of Columbia Court of Appeals.

Argued Oct. 11, 1988.
Decided Nov. 17, 1988.

---

Peter H. Meyers, Washington, D.C., for appellant.

Glenn A. Fine, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, and June M. Jeffries, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS,* Chief Judge, and FERREN and SCHWELB, Associate Judges.

* Judge Rogers was an Associate Judge of the court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

FERREN, Associate Judge:

According to the government's evidence, appellant and another man, both of whom were carrying guns, ordered three other men into an alley and robbed them. Bystanders flagged down a police car, which drove into the alley. Appellant ran, followed by a police officer. The two exchanged gunshots, but neither was hit. Appellant soon was captured. A jury found appellant guilty of one count of armed robbery, D.C.Code §§ 22–2901, –3202 (1981), one count of assault with a dangerous weapon (ADW), id. § 22–502, one count of assault on a police officer while armed, id. § 22–505(b), and one count of carrying a pistol without a license, id. § 22–3204. The trial court vacated the ADW conviction because it merged with the other assault conviction. The court then sentenced appellant to imprisonment for terms of 4 to 12 years for the armed robbery and 3 to 10 years for the assault on a police officer while armed, to be served consecutively, and to a concurrent prison term of one year for the pistol conviction. The trial court held a post-trial evidentiary hearing on appellant's motion to dismiss the indictment because of prosecutorial misconduct and denied appellant's motion. Appellant filed a timely appeal to this court and also filed a *pro se* motion in the trial court, pursuant to D.C.Code § 23–110 (1981), to vacate his convictions. The trial court denied this motion without an evidentiary hearing. Appellant raises numerous claims of error on appeal. The issue of principal significance —and the only one that causes us to publish this opinion—is an allegation of prosecutorial misconduct before the grand jury. Under the circumstances, we affirm.

I.

Appellant asks us to exercise our supervisory power to order dismissal of the indictment because of prosecutorial misconduct before the grand jury: the prosecutor's gross negligence in presenting false

testimony. Although appellant has cited three instances, only one merits discussion. In response to a juror's question about whether the gun found at the scene of the crime was one of the guns actually used in the crime, Officer Dubeau stated that a paraffin test for powder on the individual's hand had been positive. In fact, no paraffin test had been conducted; rather, a nitric acid test for gun powder residue had been used, and the results had not yet been obtained.

At a post-trial evidentiary hearing on appellant's motion to dismiss the indictment, the Assistant United States Attorney who had presented the case to the grand jury testified that, at the time, he had believed Officer Dubeau's testimony to be true, even though the Assistant's own notes in preparation for the grand jury proceeding indicated "Nitro swabs taken from defendant's hand." The Assistant further testified that he knew the purpose of the nitric acid swab test but that when he had heard the testimony about the paraffin test, he must not have been concerned about the possible incongruity. We understand the Assistant to mean that Dubeau's testimony did not signal the possibility that, in light of the Assistant's own notes, the officer had a faulty memory or was not telling the truth.

■ We agree that this situation reflects gross negligence and cannot be condoned. On this record, however, reversal of the conviction is not warranted. The indictment under the circumstances cannot be dismissed even though partially based on false testimony. *See Coppedge v. United States,* 114 U.S.App. D.C. 79, 82–83, 311 F.2d 128, 131–32 (1962), *cert. denied,* 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963); *see also Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). Nor has appellant been prejudiced in such a way that this court should exercise its supervisory power to dismiss the indictment as a sanction for government misconduct.

■ Recently, in *Bank of Nova Scotia v. United States,* — U.S. —, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), the Supreme Court held that "a federal court may not invoke supervisory power to circumvent the harmless error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)." *Id.* 108 S.Ct. at 2374. Thus, a federal court must find prejudicial error before dismissing an indictment because of prosecutorial misconduct in a federal grand jury investigation. The Supreme Court stated more specifically that, as to nonconstitutional error, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 2374 (citation omitted). We take the same approach here. *See* Super.Ct.Crim.R. 52(a) (harmless error; identical to federal rule). Officer Dubeau's testimony about the paraffin test, while false, was not material because, given the other incriminating evidence before the grand jury, a truthful answer would not have "substantially influenced" the grand jury's decision to indict. We have reached that conclusion after reviewing the entire grand jury proceedings *in camera,* as did the trial court.

■ Appellant has sought access to the grand jury proceedings in an effort to demonstrate prejudice. Under the circumstances, we perceive no "particularized need sufficient to outweigh the strong policy in favor of grand jury secrecy." *United States v. Alexander,* 428 A.2d 42, 52 (D.C. 1981). Appellant, in any event, received a substantial portion of the testimony before the grand jury—in particular, the testimony of witnesses Green, Dubeau, and Johnson (through Dubeau)—demonstrating that the indictment was supported by sufficient competent evidence.

## II.

■ Appellant seeks reversal and dismissal of his indictment for violation of his sixth amendment right to a speedy trial. We have applied to this record the four factors elaborated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed. 2d 101 (1971)—length of delay, reasons for

delay, assertion of the right, and prejudice—and conclude that appellant's argument must fail. Although the time between arrest and trial was 27 months, and appellant's claim thus has *prima facie* merit, *see Branch v. United States*, 372 A.2d 998, 1000 (D.C.1977), the government has carried its burden to justify the delay.

■ Most of the delay was attributable to normal court congestion, which is not counted heavily against the government, *see Graves v. United States*, 490 A.2d 1086, 1092 (D.C.1984) (en banc), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986), and three months were due to appellant himself seeking new counsel. Another nine months were attributable to appellant's interlocutory appeal of a court order to give a blood sample.[1] These nine months were the appellant's own responsibility and thus do not count toward his speedy trial claim. *See United States v. Loud Hawk*, 474 U.S. 302, 316, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1985).

We also note that appellant did not demand a trial until more than 21 months after his arrest, *see Jackson v. United States*, 503 A.2d 1225, 1228 (D.C.1986), and most of his claims of prejudice are bare assertions. *See Taylor v. United States*, 471 A.2d 999, 1003 (D.C.1983). Moreover, his incarceration, while prejudicial, was in part attributable to a detainer from New Jersey. *See Graves*, 490 A.2d at 1104. Accordingly, appellant's speedy trial claim must be rejected.

### III.

■ Appellant contends that the trial court abused its discretion by refusing to sanction the government for failing to preserve a police radio broadcast. Under the "totality of the circumstances," *see Bartley v. United States*, 530 A.2d 692, 697 (D.C. 1987), we perceive no abuse. The trial court found no bad faith (police broadcast tapes are reused routinely and thereby erased), the evidence apparently contained no description of the suspect, and the evidence of appellant's guilt was overwhelming. *See id.* Appellant also argues for reversal because the trial court declined to give appellant's particularized instruction on misidentification and refused to give the last paragraph of Criminal Instruction 4.15 concerning assault on a police officer. These contentions are frivolous. Nor did the trial court err in denying appellant's motion to suppress his statement to Officer Turner. Appellant made his statement spontaneously, not in response to any questioning by Officer Turner. Thus, his statement was not the product of custodial interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Also, there was no trial court error in refusing to suppress Officer Watkins' identification of appellant at the scene, since the show-up procedure did not create a "substantial likelihood of irreparable misidentification." *See Singletary v. United States*, 383 A.2d 1064, 1068 (D.C.1978).

### IV.

Finally, appellant contends the trial court improperly dismissed without a hearing his *pro se* motion under D.C.Code § 23–110 (1981). We agree with the trial court that a hearing was not required because appellant's claims are vague and conclusory, or "palpably incredible," or do not merit relief even if true. *See Pettaway v. United States*, 390 A.2d 981, 984 (D.C.1978). More specifically, appellant's allegations of a denial of due process and of a fair and impartial jury are vague and conclusory. *See id.* Furthermore, as to the claim of ineffective assistance of trial counsel, appellant's allegations that counsel did not investigate,

---

1. Appellant noted that the government had been unable, by the time of trial, to conduct a test of the blood collected from the scene. He argues that his court-ordered blood test, therefore, must have been premised on government misrepresentations of the need for it. The record shows that at the time it obtained the order for a blood sample, the government had probable cause to believe it had recovered enough blood from the scene to permit a comparative test. The record further shows that the government's failure in the end was attributable to dilution of its blood sample because of the passage of time. The record also shows that appellant was responsible, to some extent, for slowing down his interlocutory appeal.

interview, or subpoena police officer witnesses were also vague and conclusory, and his allegation that his counsel and the prosecutor colluded to deprive appellant of a fair trial is palpably incredible. *See id.* Appellant's other allegations of ineffectiveness, including his claim of ineffectiveness for failure to interview and subpoena Officer Jenkins, do not state facts that satisfy *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), since on this record appellant has not established prejudice.

We note that appellant, in letters to this court dated September 27, 1988, and September 30, 1988, has further detailed reasons for his § 23–110 motion and noted his wish that appellate counsel and this court give this motion primary attention. We have carefully reviewed appellant's contentions in these letters, which raise no new arguments, as well as the contentions in his motion and appellate brief, and find no basis for reversal.

AFFIRMED.

SCHWELB, Associate Judge, concurring:

The case against Sanders was overwhelming. There was sufficient truthful evidence to indict him. He was later found guilty beyond a reasonable doubt, and justly so. Under these circumstances, I agree with the majority that the conviction should not be reversed in the exercise of our supervisory power. *Bank of Nova Scotia,* — U.S. —, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). I write separately, however, to emphasize my view that the handling of this case before the grand jury was so troubling that more pejorative adjectives come to mind.

Officer Dubeau told the grand jury, under oath, and in response to a juror's question, that there was a positive paraffin test linking the gun recovered on Sanders' escape route to the robbery. In fact, there was *no* paraffin test and no positive test of any kind. The way in which this testimony came to be given would make any reasonably objective observer wince. I can only

hope that it represents a departure from a more reliable norm.

According to the prosecutor's proffer during trial, Officer Dubeau had heard "somebody" say at the robbery squad that "they were going to do a test on the defendant's hands." He thought that he later received information from "somebody," that the test had been conducted and that the results had been positive. The prosecutor continued:

Who he [Dubeau] heard that from, at this point of time, he cannot say.

This melange of rumor and assumption became unqualified sworn testimony against the defendant before the grand jury. The prosecutor, who would be expected to know if he had so powerful a piece of artillery in his arsenal as a paraffin test, said nothing at the time and never checked to determine if this spectacular addition to his case was authentic.

The trial judge, who heard Officer Dubeau's trial testimony, found that there was no willful deception. That finding was based in part on the judge's observation of the officer's demeanor, and we cannot second guess him.

The government's obligation, however, goes beyond avoiding deliberate perjury. A man's liberty was at stake. Indeed, Sanders faced life imprisonment. To transpose an apt precept from another area of the law,

the arbitrary quality of thoughtlessness can be as disastrous and unfair to private rights and the public interest as the perversity of a willful scheme.

*Hobson v. Hansen,* 269 F.Supp. 401, 497 (D.D.C.1967); *aff'd sub nom. Smuck v. Hobson,* 132 U.S.App.D.C. 372, 408 F.2d 175 (1969). The conversion of barely recalled and sourceless hearsay, without qualification, into testimony under oath, goes well beyond thoughtlessness. It reflects a lack of concern as to whether the evidence against a "guilty" defendant is true or false.

On the facts in this record, I am satisfied that the individual aggrieved by the presentation of an imaginary positive paraffin test was guilty of the crimes for which he

was indicted and of which he was convicted. He suffered no legal prejudice as a result of being indicted, in part, on the basis of worthless testimony. To avoid the indictment, conviction and incarceration of some innocent person in the future, however, I hope that the United States Attorney and the police authorities will take this incident seriously,[1] look carefully into what happened here, and do whatever they can to ensure that evidence presented by the government to the courts and juries of this city will be truthful and reliable.

---

**1.** In what must be characterized as a resort, if not to situational ethics, then at least to opportunistic characterization, the government has eschewed, in its brief, the familiar talismanic recitation that the witness is an "experienced police officer." *Cf. In re D.J.*, 532 A.2d 138, 143 (D.C.1987). Rather, it has described Officer Dubeau, who created a positive paraffin test out of station house gossip, as "inexperienced." One does not need dozens of years on the police force to be more careful and more accurate than that.