**Chris A. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 97–CF–1919.**

District of Columbia Court of Appeals.

Argued Feb. 29, 2000.
Decided Aug. 1, 2002.

---

M. Elizabeth Kent, Washington, DC, appointed by the court, for appellant.

Mark J. Lesko, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Oscar S. Mayers, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, RUIZ, and GLICKMAN, Associate Judges.

TERRY, Associate Judge:

After a jury trial, appellant was convicted of assault with a dangerous weapon, possession of a firearm during a crime of violence (PFCV), and carrying a pistol without a license (CPWL). On appeal he contends that the trial court erred in (1) denying his motions to strike two jurors for cause, excusing three jurors for hardship, and granting both the defense and the prosecution two additional peremptory strikes during the voir dire of the jury, and (2) denying his motion for a new trial, in which he asserted that the court had erred in dealing with a jury note. We affirm.

I

This case arises out of a shooting on August 16, 1994, which left one person

dead and another wounded. Because the facts of the offense have no bearing on the issues raised on appeal, we give only a brief summary here.

After an argument during a basketball game between appellant and the decedent, George Allen, both men went back to their respective homes and obtained guns. About an hour later, appellant and Allen ran into each other in the Clay Terrace neighborhood and engaged in a shootout. Allen was with a friend, Mario Burt. Appellant claimed that he shot at Allen and Burt in self-defense. Burt and Allen were both wounded; Allen died of his wounds.

Appellant was charged with first-degree premeditated murder of Allen while armed, assault on Burt with intent to kill while armed, and the two firearms offenses. The case went to trial in April 1996, but the jury was unable to agree on a verdict. A second trial began in July 1997 before a different judge. At its conclusion the jury found appellant guilty of assault on Burt with a dangerous weapon (a lesser included offense of assault with intent to kill while armed), PFCV, and CPWL, but it acquitted him of all charges (including lesser offenses) relating to Allen, thus apparently accepting appellant's claim of self-defense with respect to Allen.

Exactly one week after the verdict, appellant filed a motion for new trial, arguing that he had been prejudiced by the manner in which the courtroom clerk dealt with a jury note. Appellant asserted that he and his counsel had the right to see the note and to know its contents before any response was made to the jury. After the government filed an opposition to the motion, the court held a hearing at which the courtroom clerk testified. At the conclusion of the hearing, the court denied appel-

lant's motion, concluding "that any possible error was not prejudicial." The court then imposed three concurrent sentences totaling seven years under the Youth Rehabilitation Act, D.C.Code § 24–803(b) (1996).

### A. *The Voir Dire*

Before the voir dire of the jury began, the trial judge said to both attorneys:

> I always ask, when I get fourteen people in the box and you've finished all your strikes, if there is anyone with a hardship that they did not bring to our attention. I don't want jurors who are dropping off, and I inevitably have one or two. So when you do your strikes, you have to think one or two beyond what you would otherwise think in terms of your panel. Any questions about that?

Defense counsel made no objection at this point, raising only a question about seating.

As the voir dire progressed, the judge denied two of defense counsel's motions to strike jurors for cause. The first of the two, juror number 141, worked at the Department of Justice and knew both attorneys and the judge in the case. He said that he had been an Assistant United States Attorney for four years, from 1985 to 1989, and that he was currently a candidate for the position of United States Attorney.[1] When asked whether he would be willing to serve on a criminal jury and whether he could be fair and impartial, the juror replied that he "might not mind the break" and added, "I think I'd be a terrific juror." He also said he would be willing to find appellant not guilty "in a heartbeat" if the government did not prove its case. Defense counsel moved to strike juror 141

---

1. He also said that "NPR [National Public Radio] and the Legal Times say I'm not going to get it."

for cause, but the judge denied the motion, saying, "I've never struck anybody by employment only. . . . I don't see any cause beyond the fact that he's a former [*sic*] Justice employee."

The judge also refused to strike juror number 94. This juror told the judge that four of his best friends were police officers (all outside the District of Columbia, in the Maryland and Virginia suburbs), that his sister was a lawyer who occasionally handled criminal cases, that he had "a very hard view on guns and youth," and that he did not approve of "young brothers with guns." However, the juror also said that he could apply the principle that a defendant was innocent until proven guilty, and that he thought he could listen fairly to the evidence presented. Defense counsel moved to strike juror 94 for cause. The judge denied the motion, stating that the juror's opinion about guns was probably the opinion of most people in the community and observing that the juror had said he could be "fair and impartial." The judge suggested that counsel could use one of his peremptory strikes against juror 94 if he were actually selected to hear the case.

Both the government and appellant then exercised their ten peremptory strikes for regular jurors. *See* Super. Ct.Crim. R. 24(b). The government also struck one of the two alternate jurors, but appellant passed on his peremptory strike of an alternate juror. *See* Super. Ct. Crim. R. 24(c)(2). After all the prospective jurors were seated in the jury box, the judge asked if there was anyone "who had a hardship which they did not bring to our attention." Four jurors responded. Juror 871 stated that she had an "out of state business meeting" that would affect a pro-

motion. Juror 966 said she was a student with both a full-time and a part-time job. Juror 930 had a landlord-tenant court date during the time scheduled for the trial in this case. Juror 91 said she was a self-employed psychologist with no outside source of income and would lose money if forced to do jury duty for a whole week.

The judge said she would give each side an additional peremptory strike, to be used "any way you want, alternate or otherwise," because she was going to excuse three of the jurors with hardships; however, counsel could use the additional strike only for a new person coming onto the jury, not for someone already in the jury box. When defense counsel objected and asked instead for two additional strikes, the judge agreed, granting two more peremptory strikes to each side, rather than just one. The judge then excused jurors 871, 966, and 91.[2] One of those three had already been designated as an alternate, and by happenstance juror number 94, one of the next three persons on the venire list, was selected to replace her in the alternate's seat. Defense counsel then exercised the first of his two additional peremptory strikes to remove juror 94, but as luck would have it, he was replaced—again as an alternate—by juror 141. Counsel used the second of his additional peremptory strikes to remove juror 141. He was replaced by juror 168, to whom neither party had objected.

After the voir dire was completed, but before the jurors were sworn, defense counsel raised a *Batson* challenge.[3] In rejecting this challenge, the trial judge said:

> We did here exercise more strikes, and I'll note this for the record. We

---

**2.** The judge declined to excuse juror 930, but told him that she would arrange to have his landlord-tenant case rescheduled.

**3.** *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant does not press his *Batson* claim on appeal.

filled the jury box with the ten strikes plus one for alternates, the alternate seats are seven and eight.

At the time we were about to conclude our process, three [or] four jurors, four jurors raised what they viewed as substantial hardships, and the court felt . . . that we could not keep them here for a whole week, given their positions, so I granted all—both sides two additional strikes for any new people because Mr. Horton [defense counsel] indicated that once—one additional strike wouldn't do it because he had some definite nos and he hadn't gone that far into the panel, and I understood his position, so I granted both sides two strikes of any new people, not old people coming onto the jury, but new ones. So, therefore, what we had was thirteen strikes per side, including the alternate. Only Mr. Horton passed, so everybody exercised all strikes, with the exception of defense counsel [who] passed on the very last of the thirteen. Or he passed on the alternate seat, but effectively defense counsel exercised twelve strikes, and the prosecution exercised thirteen.

The jury was then sworn, and the trial began. At the end of the trial, both alternate jurors were excused with the thanks of the court and did not participate in the jury deliberations or the verdict.

### B. *The Jury Notes*

During deliberations, the jury sent out a note stating, "Can our verdict be different for the offenses against George Allen as the ones against Mario Burt if 'self defense' is the plea of the defendant?" Defense counsel requested that page 41 of the instructions be re-read to the jury. The judge brought the jury into the courtroom and said:

Ladies and gentlemen, the answer to your question is it may be different. It doesn't have to be. But that the simple answer is yes, it can be. I would also refer you to page 41 of the court's jury instructions, where it says each offense and the evidence which applies to it should be considered separately, and you should return separate verdicts as to each count of the indictment.

Unless instructed otherwise, the fact that you may find the defendant guilty or not guilty on any one count of the indictment should not control or influence your verdict with respect to the other counts of the indictment.

Since it was late on a Friday afternoon, the judge then dismissed the jury for the weekend. The jury returned its verdict the following Monday, July 28.

In his motion for new trial, appellant asserted that on the afternoon of Friday, July 25, his counsel was informed that the jury had sent out a note. The courtroom clerk advised both counsel that he had read the note and sent it back to the jury because it was improper and needed to be rewritten. Later in the afternoon, the jury sent out a second note, to which the trial judge responded with the supplemental instruction quoted above. Appellant argued in his motion that he was entitled to know the contents of the original note before the clerk or the judge responded to it. The government filed an opposition to the motion, stating that the courtroom clerk had summarized the contents of the first note, and that it had said, "If we find the defendant guilty or not guilty of murder with regard to George Allen, do we have to find the same way with assault on Mario Burt?" The government argued that the court had correctly refused to accept an improper note, and that even if there was error, appellant had not suffered any prejudice.

At the hearing on the motion, the trial judge first stated that she had never seen

the first note and observed that it was not in the record. "The note . . . was given to Mr. McWain [the courtroom clerk], who suggested, after reading it, that the jury rewrite it in order not to reflect any verdict. [That] is what I was told after the fact, and he immediately called counsel, expecting the rewrite to be coming momentarily from the jury. No rewrite came momentarily, but a second note came a little while later." The judge then called Anthony McWain to testify. He said that a juror, possibly the foreman, came and knocked on the door and gave him a note, but expressed some doubt about whether the judge should see the note or not. Mr. McWain continued, "To the best of my recollection [the note said]: If we find the defendant not guilty of a certain charge, should we find the defendant guilty of another charge?" Defense counsel then asked him if he recalled saying, a day or two later, that the note had said "in essence" that "if the jury found the defendant not guilty on one—on a certain charge, could it also find him not guilty on the other charge?" McWain replied, "I probably told you that at the time. I just don't remember if the second part was not guilty or guilty." He also testified specifically that there was no numerical division revealed in the note.

About five minutes after returning the note to the juror, Mr. McWain told the judge that he had done so, that the note contained something she should not see, and that he therefore had asked the juror to rewrite it. He then called both counsel and told them that there was a note and what its contents were, and said that he had asked the jury to rewrite the note. One of the attorneys asked about the note, but he could not recall which one. Mr. McWain added:

> I can't say it was a verdict, but it— they stated what a verdict would be. It seems to me they stated like, you know, guilty or not guilty, not necessarily meaning that there was a guilty—I mean, that was the verdict, but they came out and said, you know, something that shouldn't have been said as far as I was concerned, as far as I was taught that, you know, the judge shouldn't know [about] a split and shouldn't know a verdict; and stating that they had put down not guilty, that, to me—I considered that was a verdict even though it could not have been a verdict.

The trial judge denied appellant's motion for new trial, ruling that "[w]hatever impropriety there was in telling the jury to rewrite the note, I don't think it resulted in prejudice. Any possible error, even if not waived, was harmless." Therefore, the judge said, "I have to conclude that any possible error was not prejudicial, that it did not affect the jury's deliberations."

## II

■ Appellant maintains that the trial judge's granting of two additional peremptory strikes to each side violated Super. Ct.Crim. R. 24 and D.C.Code § 23–105 (2001), both of which, he asserts, "limit the number of peremptory challenges." Rule 24(b) gives ten peremptory challenges to each side in a felony case. Rule 24(c) entitles each side to one additional peremptory challenge if one or two alternate jurors are empaneled, as in this case, but that additional challenge "may be used to remove an alternate juror only . . . ." On these points D.C.Code § 23–105 is essentially identical to Rule 24 in all material respects. Appellant contends that the granting of two extra peremptory challenges, rather than just one, was contrary to both the statute and the rule. In addition, he argues that the procedure followed prescribed by the trial judge, "which could be used to strike either regular or alter-

nate replacement jurors," violated Rule 24(c), "which proscribes such commingling."

■■ The Supreme Court held in *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), that "structural errors" in a trial could never be harmless, but that "trial errors" could be deemed harmless, depending on the circumstances. *See Sams v. United States*, 721 A.2d 945, 950 (D.C.1998), *cert. denied*, 528 U.S. 1135, 120 S.Ct. 977, 145 L.Ed.2d 928 (2000) (citing *Fulminante*). In *Lyons v. United States*, 683 A.2d 1066, 1067 (D.C. 1996) (en banc), this court "held that errors adversely affecting the exercise of peremptory challenges were not structural errors within the meaning of *Fulminante;* consequently, without a showing of actual juror bias, they were not *per se* reversible." *Sams*, 721 A.2d at 951 (discussing *Lyons*). Claims of error involving peremptory challenges are therefore reviewed under a plain error standard if the issue has not been properly preserved at trial, and under a harmless error standard when it has been properly preserved. *Id.* In addition, "even if there is a violation of a defendant's right of peremptory challenge, reversal is not required absent a showing of actual juror bias." *Id.* at 952.

■■ In this case appellant did not preserve his objection to the two additional peremptory strikes. On the contrary, it was appellant's counsel who, in fact, requested two additional strikes, rather than the one originally allowed by the judge. Therefore, his claim of error must be reviewed under the plain error standard, under which he "must demonstrate both that the alleged ... error was obvious or readily apparent, and that it was so clearly prejudicial to [his] substantial rights as to jeopardize the very fairness and integrity of the trial." *Brooks v. United States*, 655 A.2d 844, 847 (D.C.1995) (citations and internal quotation marks omitted); *see Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) (defining plain error). He has not made such a showing. Indeed, we would be hard pressed to find any error at all, let alone plain error, especially when it was defense counsel who specifically asked for two additional strikes. *See Brown v. United States*, 627 A.2d 499, 508 (D.C.1993) ("a defendant may not take one position at trial and a contradictory position on appeal" (citations omitted)).[4]

■■ Appellant also contends that the court erred in denying his request to strike two jurors, 141 and 94, for cause. "The trial judge has broad discretion over whether to strike a juror for cause ... and the exercise of that discretion will not be reversed unless the juror's partiality is manifest." *Harris v. United States*, 606 A.2d 763, 764 (D.C.1992) (citations and internal quotation marks omitted). In this case, however, we need not decide whether the judge abused her discretion because neither of the two prospective jurors whom appellant sought to strike for cause ended up on the jury that actually heard the case (both were removed by peremptory challenges). Any suggestion that appellant was erroneously forced to use two peremptory challenges to strike jurors who should instead have been removed for cause must be rejected in light of *United States v. Martinez–Salazar*, 528 U.S. 304, 317, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), which held that "a defendant's exercise of peremptory challenges pursuant to Rule 24(b)

---

4. If appellant's complaint is that the court erred by allowing the government, as well as the defense, to have two additional peremptory strikes, such a claim is foreclosed by Su-

per. Ct.Crim. R. 24(b), which provides in part that "in no event shall one side be entitled to more peremptory challenges than the other."

is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause."

■ Finally, we address appellant's challenge to the trial judge's decision to excuse three additional jurors after all the peremptory strikes allowed by the rule had been made. Again we are in a highly discretionary area. This court has held that a trial court has "great discretion in the manner in which to conduct a voir dire, [but] we advise trial courts to apprise the parties of the rules which will govern the jury selection prior to the start of the process." *Taylor v. United States,* 471 A.2d 999, 1004 (D.C.1983). The judge in this case did exactly what *Taylor* recommended. Before the voir dire began, she told both counsel that she would ask a hardship question at the end of the voir dire. When she did so, and four jurors responded, the judge decided to excuse three of the four and offered to give each side one more peremptory strike. Then, when defense counsel complained that one was not enough, she gave both sides two— which they exercised. We see no reason to second-guess the trial judge, who went further than she needed to go in order to accommodate the concerns of defense counsel.

In *Taylor* this court found no reversible error when there was an announcement about the rules governing peremptory strikes midway through the voir dire process. *Taylor,* 471 A.2d at 1005. In *Lee v. United States,* 699 A.2d 373 (D.C.1997), the trial court gave a similar announcement before any strikes were made, but there was a second venire which altered the process midway through the peremptory strikes. We nevertheless affirmed the conviction because there was "substantial parity between the parties, [and] the change affected each side almost equally

and therefore created no actual prejudice...." *Id.* at 382. There is nothing in this case to suggest that we should go beyond *Taylor* and *Lee,* especially when appellant has made no showing at all that any member of the jury was in fact biased. *See, e.g., Graham v. United States,* 703 A.2d 825, 829 (D.C.1997) ("the record contains no facts to support a finding of actual bias"); *Young v. United States,* 694 A.2d 891, 893 (D.C.1997) (affirming trial court's finding of "no evidence whatsoever that [an allegedly tainted] juror had any actual bias against the defendants or in favor of the government"). The record confirms that here, as in *Lee,* there was "substantial parity between the parties" and that "no actual prejudice" resulted from the judge's decision to excuse the three jurors for hardship.

■ In order to obtain reversal, appellant "must show not only that there was error in the trial court's jury selection procedure, but that [he] suffered prejudice as a result of this error." *Lee,* 699 A.2d at 381. Given the trial court's "great discretion" in conducting a voir dire, *Taylor,* 471 A.2d at 1004, and the lack of any showing of prejudice or actual juror bias, *Sams,* 721 A.2d at 952, we find no error—and certainly no plain error—in any of the trial judge's rulings relating to the voir dire of the jury.

### III

■ Under Superior Court Criminal Rule 43(a), a defendant is entitled (with very limited exceptions) to be present at "every stage of the trial including the impaneling of the jury and the return of the verdict...." The rule applies specifically to communications to and from the jury during its deliberations, as this court recognized in *Hallmon v. United States,* 722

A.2d 26 (D.C.1998).[5] We held in *Hallmon* that "[a] defendant and his counsel have a right to be informed of all communications from the jury and to offer their reactions before the trial judge undertakes to respond." *Id.* at 27 (quoting *(Michael) Smith v. United States,* 389 A.2d 1356, 1361 (D.C.1978)).

In the case at bar, the courtroom clerk responded directly to the note from the jury without informing the judge or either counsel before doing so. This action was erroneous, as the government concedes. The government asserts, however, that appellant waived his claim of error by not raising the issue until his motion for a new trial, even though he knew about the note before the jury even returned its verdict. It is generally required, and certainly preferable, that a party properly raise issues as they arise during trial in order to preserve them for appellate review. *See Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967). We assume for the sake of argument that if appellant had challenged the clerk's action before the jury returned its verdict, the note probably could have been retrieved and discussed by the court and counsel. Nevertheless, we need not decide whether appellant waived the issue by failing to raise it earlier, because we are satisfied that even if he had made a timely objection, reversal would not be warranted.

*Hallmon,* like this case, involved a jury note to which the courtroom clerk responded without disclosing the contents of the note to counsel. In its note the jury requested a written copy of the court's instructions, and the clerk wrote back that "any part of the instructions can be reread to you in open court at your request." It was not clear from the record whether the trial judge had seen the note or authorized the response. We held that, "[r]egardless of the reason, it was improper for the clerk to respond directly to the jury's note, and the trial judge should not have allowed it." 722 A.2d at 27. Nevertheless, we found the error harmless, partly because the note "did not concern a substantive matter at issue in the case," and partly because there was no showing of prejudice. *Id.* at 28.

In the more recent case of *Foster v. George Washington University Medical Center,* 738 A.2d 791 (D.C.1999), the jury sent a note which implied, but did not explicitly state, that it had reached a verdict. The courtroom clerk, believing that the note was "somewhat suggestive," asked the judge (in the absence of counsel) what to do with it. The judge told her to ask the jury to rewrite the note. We said that "[i]n some fashion or other, counsel for the parties should have been consulted about what to do before the note was returned unanswered." *Id.* at 796. Concluding that in the particular circumstances of the case (which included two earlier notes indicating that the jury might be confused), the plaintiff had been prejudiced, we reversed the judgment and remanded the case for a new trial. *Id.* at 797.

The present case falls somewhere between *Hallmon* and *Foster.* The note in *Hallmon* involved a "non-substantive" issue, and this fact helped us to decide that there was no prejudice to the defendant. *Hallmon,* 722 A.2d at 28. In *Foster,* on the other hand, we found prejudice because, even though the judge did not know the contents of the note, it raised a substantive legal question, and the judge was

---

5. "Communications with the jury during its deliberations are just as much a part of the trial as the voir dire or the examination of witnesses, and thus are subject to the strictures of Criminal Rule 43...." *Hallmon,* 722 A.2d at 27.

already on notice that the jury might be confused on that very issue. The note in the case at bar (unlike *Hallmon*) raised a substantive legal question, but there was no indication of any jury confusion (as there was in *Foster*), at least on any point that was not also covered by the second note.[6] Nor were there other potential red flags to alert the judge to an undisclosed problem. Moreover, the jury rewrote the note, as the clerk recommended, and the judge responded to the rewritten note with a supplemental instruction after discussing the matter with counsel.

What puts this case on the *Hallmon* (affirmance) side of the ledger, rather than the *Foster* (reversal) side, is the absence of prejudice. After an evidentiary hearing, the trial judge found that the first (unseen) note and the second note were substantially similar, a finding supported not only by the testimony of the courtroom clerk but also by the recollections of counsel. She then concluded that the clerk should have shown the note to both counsel before sending anything back to the jury, but that, because the first note was not materially different from the second note, which counsel had a chance to review and discuss before a response was made, there was no prejudice emanating from the clerk's actions; consequently, any resulting error was harmless. Appellant has not persuaded us that this conclusion was wrong, nor can we discern any prejudice after examining the record ourselves. Accordingly, we find no ground for reversal in the clerk's response to the first jury note.

IV

The judgment of conviction is accordingly

*Affirmed.*

---

6. As the government states in its brief:

   To the extent the first note expressed any confusion at all, it was over the instruction regarding separate charges and separate verdicts, which was ultimately re-read to the jury in response to the second note. The second note asked the question whether appellant's self-defense claims were interdependent. Indeed, [the judge commented] that the "jury was very clear what was on their mind," and that the second note was "probably better written" because it indicated that the jury was interested in determining whether appellant's self-defense claims were interdependent.