Ahmed Yousef AHMED, Appellant,

v.

UNITED STATES, Appellee.

No. 01–CF–682.

District of Columbia Court of Appeals.

Argued March 16, 2004.
Decided April 22, 2004.

Reita Pendry for appellant.

Donnell W. Turner, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman and Ann M. Carroll, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and WASHINGTON, Associate Judges, and KERN, Senior Judge.[*]

PER CURIAM.

After a jury trial, appellant Ahmed Yousef Ahmed ("Ahmed") was convicted of first degree child sexual abuse,[1] second degree child sexual abuse,[2] and incest.[3] The complaining witness in the case was Ahmed's daughter ("H.A."). On appeal, Ahmed argues that the trial court erred when it: 1) failed to remove two jurors for cause, forcing him to use his peremptory challenges to excuse the jurors, 2) excluded expert testimony on the way children remember and relate events, and 3) allowed H.A. to testify outside his presence. For the following reasons, we affirm.

## FACTUAL SUMMARY

On February 22, 1999, Ahmed was indicted with charges relating to the sexual abuse of his teenage daughter H.A. During jury selection, defense counsel chal-

---

[*] The decision in this case was originally issued as a Memorandum Opinion and Judgment on April 22, 2004, and is now being published at the request of the trial judge.

[1] In violation of D.C.Code § 22–4108 (1981), recodified at D.C.Code § 22–3008 (2001).

[2] In violation of D.C.Code § 22–4109 (1981), recodified at D.C.Code § 22–3009 (2001).

[3] In violation of D.C.Code § 22–1901 (1981), recodified at D.C.Code § 22–1901 (2001).

lenged the inclusion of two jurors based on their alleged partiality to the government. During voir dire, the jurors related that they had been victims of crimes, and both indicated that they would be inclined to believe the police or the complaining witness. Although Ahmed challenged both jurors for cause, the trial court refused to strike the jurors. In both instances, the trial court found that the jurors would be able to follow the court's instructions. Ahmed ultimately used his peremptory challenges to remove the two jurors from the panel, and made no objections to the jury that was ultimately empaneled.

During trial, Ahmed sought permission to call Dr. Mark Everson, a child psychologist specializing in child sexual abuse, as an expert for the defense.[4] Dr. Everson's proffered testimony focused on the narrow issue of whether H.A.'s account of the events of her sexual abuse was consistent with the way children remember events. Specifically, Dr. Everson would testify that when children recall and relate actual events in their lives, they generally do so by providing idiosyncratic detail. If a child relates events in straightforward, formulaic terms, "it's not likely to be the product of memory...." Defense counsel further stated that Dr. Everson would not testify as to whether H.A. was telling the truth about the incidences of sexual abuse with her father, but that he would limit his testimony to his own research and personal experience. The government opposed the request, arguing that Dr. Everson's testimony would inappropriately evaluate H.A.'s credibility.

After lengthy discussions about Dr. Everson and his proffered testimony, the

court denied Ahmed's request. The trial court explained its decision using the three-part test governing admissibility of expert testimony set out in *Dyas v. United States,* 376 A.2d 827 (D.C.) *cert denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977). First, the trial court found that Dr. Everson's testimony was "not beyond the kin [sic] of the average juror to evaluate the credibility of a child." The trial court noted that, although there was no case law on whether childhood memory issues are appropriate for expert testimony, the Court of Appeals had previously rejected admission of expert testimony relating to adult memory and perception. Second, the trial court stated that there was no reason to question Dr. Everson's credentials or expertise. Third, the trial court held that Dr. Everson's proffered testimony did not appear to be based upon generally accepted analyses and techniques for this field of study and, thus, was inappropriate to present as expert testimony.

During Ahmed's trial, H.A. was called to testify about the circumstances under which her father had allegedly sexually abused her. H.A. testified on November 28, 29, and 30, 2000. During this time, H.A. gave direct testimony and began to be cross-examined in Ahmed's presence. Through H.A.'s testimony, she often cried and stated that she was afraid of her father. On November 29, H.A.'s guardian ad litem noticed that H.A. was "in tremendous crisis" and requested that the rest of H.A.'s testimony be taken outside Ahmed's presence. The trial court denied the request.

4. Ahmed had first identified Dr. Everson as an expert witness for the defense in a motion before trial. At that time, Ahmed sought to call Dr. Everson to testify about whether a child's report of sexual abuse can be influenced by suggestive interview techniques. In opposition, the government argued that the issue of suggestibility was inappropriate testimony for an expert witness. Ahmed later withdrew his motion to call Dr. Everson on this issue.

The trial court held a hearing on November 30 to assess whether H.A. would be able to continue her testimony in the presence of her father. H.A.'s therapist, qualified as an expert in the area of clinical therapy and assessment, stated that the continuing testimony was beginning to have a "multiple effect" that would ultimately escalate H.A.'s stress to trauma. After the hearing, the trial court refused at that point to allow the remainder of H.A.'s testimony to be taken outside the presence of the defendant. The trial court did state, however, that at the "first signs of [H.A.] withdrawing," the court would allow the procedure. At this point, H.A. resumed the witness stand and was cross-examined.

Although H.A. was scheduled to continue her cross-examination the following Monday, December 4, H.A. did not appear at court. She also failed to appear on December 5. H.A.'s social worker later testified that on December 4, she and H.A. were preparing to go to court when H.A. asked to use the restroom. After H.A. did not return, her social worker unsuccessfully attempted to find her. H.A. returned to her foster home on the night of December 5. Her social worker learned that H.A. had gone to the City Place Mall in Silver Spring, Maryland during the day of December 4, and that she had slept outside the mall that night.

The trial court held a hearing on December 6 and 11 on H.A.'s ability to continue testifying in front of her father. The trial court heard testimony from H.A., her social worker, and her therapist. On December 6, during the trial court's questioning, H.A. would not respond. The trial court stated, "she has shut down." On December 11, H.A. again resumed the stand and testified that she was feeling okay, but that she did not "feel like [she]

can be able to testify in front of [her] father."

On December 11, the trial court decided to allow H.A. to complete her testimony outside the presence of her father via closed-circuit television. Although the trial court had viewed this option as a "last resort," the trial court noted that "we have a fairly full record about a degree of stress and psychological trauma that this witness has experienced in the course of her testimony."

The trial court found that, based on the full record of the events that had transpired and the testimony from H.A., her social worker, and her therapist, H.A. "need[s] a special protection, that is, the ability to go forward in the courtroom without her father being present." The trial court also relied on both H.A.'s statements and her therapist's concerns that H.A.'s trauma stemmed from having to testify in front of her father. Finally, the trial court found that H.A.'s trauma was "certainly more than *de minimis* in terms of the amount of stress and trauma that it is causing her to testify in the presence of her father."

After deliberating, the jury found Ahmed guilty on all three counts.

## ANALYSIS

### A. *Jury Selection*

 The trial judge has broad discretion when deciding whether to strike a juror for cause. *See Johnson v. United States*, 804 A.2d 297, 304 (D.C.2002). We will not reverse the trial court's exercise of discretion unless the juror's partiality is manifest. *See id.*

 Ahmed argues that the trial court committed reversible error when it refused to strike two allegedly biased jurors for cause. Even assuming that the trial court erred, however, Ahmed's argument is

without merit because he used his peremptory challenges to remove the jurors. *See id.* at 304–05 (finding no error where appellant used his peremptory strikes to strike two prospective jurors he alleged should have been removed for cause); *see also United States v. Martinez–Salazar,* 528 U.S. 304, 307, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (holding that defendant's rights were not violated when he used peremptory strike against juror that trial court should have stricken for cause, and was thereafter convicted by jury on which no biased juror sat). Because Ahmed used his peremptory strikes to remove the jurors and failed to object to the ultimate composition of the jury, we are satisfied that there is no reversible error based on this claim.

## B. *Expert Witness*

■ "We review the admission or exclusion of expert testimony for abuse of discretion. The trial judge's decision will be affirmed unless it is manifestly erroneous." *Haidak v. Corso,* 841 A.2d 316, 322 (D.C.2004) (internal citations omitted). In this jurisdiction, we use a three-part test to determine whether expert testimony is admissible: 1) "the subject matter 'must be so distinctively related to some science, profession, business or occupation *as to be beyond the ken of the average layman,'* 2) 'the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference *will probably aid the trier in his search for truth,'* and 3) expert testimony is inadmissible if 'the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert." ' *Dyas,* 376 A.2d at 832 (quoting MCCORMICK ON EVIDENCE § 13 at 29–31) (E. Cleary, 2d ed 1972) (emphasis in original).

■ In this case, Ahmed argues that the trial court erred in excluding Dr. Everson's testimony on the basis that it did not meet the three requirements set forth in *Dyas.* With respect to the first prong, the trial court found that Dr. Everson's proffered testimony was not beyond the ken of the average juror because, if allowed, it would invade the province of the jury to decide questions of credibility. The trial court relied on our prior case law where we upheld exclusion of expert testimony about human memory and perception because it was not beyond the ken of the jury. *See Taylor v. United States,* 451 A.2d 859, 866–67 (D.C.1982) (finding expert testimony about "nature of human memory and perception and mental processes involved in an eyewitness identification" to be "within the common experience and understanding of every juror."); *Brooks v. United States,* 448 A.2d 253, 258 (D.C.1982) (upholding trial court's exclusion of expert testimony on human memory and perception involving in eyewitness identifications because "cross-examination would adequately explore any problems or discrepancies in the victims' identifications, and that the expert testimony would serve no useful purpose."). Further, the trial court was satisfied that the extensive cross-examination of H.A. by Ahmed's counsel sufficiently highlighted the inconsistencies in H.A.'s testimony so that the jury could properly consider them in its evaluation of H.A.'s credibility. Because we have upheld prior judicial decisions excluding similar evidence on the basis that it improperly invaded the province of the jury, we are satisfied that the trial court's decision to exclude Dr. Everson's testimony here was not manifestly erroneous. In light of our conclusion that Dr. Everson's testimony failed to satisfy the first *Dyas* factor, we need not consider whether the court erred with respect to the remaining factors.

### C. H.A.'s Testimony Outside Presence of Defendant

■■■ Ahmed argues that the trial court violated his Sixth Amendment confrontation right in allowing H.A. to testify outside his presence because the trial court failed to make a sufficient finding of necessity. "[T]he trial court has inherent authority ... to control the conduct of the proceedings before it, in order to ensure that the proper decorum and appropriate atmosphere are established, that all parties are treated fairly, and that justice is done." *Hicks–Bey v. United States*, 649 A.2d 569, 575 (D.C.1994) (citing *Guaranty Dev. Co. v. Liberstein*, 83 A.2d 669, 671 (D.C.1951)). To protect from further harm child witnesses who have allegedly been abused, the trial court may allow the witness to testify outside the presence of the defendant through closed-circuit television. *See Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Hicks–Bey*, 649 A.2d at 570.

■■■ In *Craig*, the Supreme Court held that a defendant's Sixth Amendment Confrontation Clause right is not violated if a child witness testifies outside the presence of the defendant, as long as the court finds that the procedure is a "necessity." A finding of "necessity" requires that the trial court: 1) "hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify," 2) "find that

the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant," and 3) "must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis* ...." *Craig*, 497 U.S. at 855–56, 110 S.Ct. 3157.

In this jurisdiction, as long as the trial court makes findings which satisfy the three *Craig* criteria, the defendant's Sixth Amendment Confrontation Clause rights are not violated. *See Hicks–Bey*, 649 A.2d at 575.

In this case, "the trial court made comprehensive findings ... which clearly satisfy all the *Craig* criteria." *Id.* The trial court relied, *inter alia*, on H.A.'s continued fear of testifying in front of her father, the fact that she ran away and spent the night on the street rather than coming to court to testify, and the fact that H.A. was experiencing psychological trauma from testifying in front of her father. Because the trial court's findings were supported by the record, there was no error in allowing H.A. to complete her testimony outside the presence of her father. *See Craig*, 497 U.S. at 857, 110 S.Ct. 3157 (stressing that Confrontation Clause not violated where, in addition to a proper finding of necessity, the child witnesses "testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified.").[5]

---

5. In his brief, Ahmed also argues that he was prejudiced by the timing of the switch to H.A.'s testimony via closed-circuit television. Specifically, Ahmed argues that it would appear to the jury that "because the defense exercised the right of cross-examination, the witness had been traumatized to the point where she could not continue her testimony." Further, Ahmed argues that the defense was unable to present a cohesive trial strategy because H.A. had been missing for two days, and thus, some of her testimony was present-

ed after the defense had begun its case. Other than conclusory allegations, however, Ahmed fails to detail with any specificity the prejudice he suffered beyond the Sixth Amendment concerns expressed above. Because *Craig* balances the prejudice against a defendant in its three-prong test, and that test was satisfied here, Ahmed's arguments that the procedure invoked in his case was prejudicial are without merit. *See Craig*, 497 U.S. at 849–57, 110 S.Ct. 3157.

For these reasons, the judgment of the trial court is

*Affirmed.*