Deandre HOBBS, Appellant,

v.

UNITED STATES, Appellee.

No. 09–CF–8.

District of Columbia Court of Appeals.

Argued Jan. 11, 2011.

Decided April 28, 2011.

Lee R. Goebes, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Ronald C. Machen, Jr., United States Attorney, and Elizabeth Trosman, Suzanne G. Curt, and Steven B. Wasserman, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, Associate Judge, REID, Associate Judge, Retired,* and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant Deandre Hobbs was convicted of first-degree murder while armed (premeditated);[1] possession of a firearm during a crime of violence (PFCV);[2] carrying a pistol without a license (CPWL);[3] possession of an unregistered firearm (UF);[4] and unlawful possession of ammunition.

---

* Judge Reid was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on April 7, 2011.

1. D.C.Code § 22–2101 (2001).

2. D.C.Code § 22–4504(b) (2001).

3. D.C.Code § 22–4504(a) (2001).

4. D.C.Code § 7–2502.01 (2001).

(UA),[5] in connection with the shooting of Aaron Teeter. On appeal, he asks us to reverse his conviction, arguing that the trial court abused its discretion by replacing Juror 180 with an alternate juror after the close of evidence without a finding that Juror 180 was unable or disqualified to perform her juror duties, as required by Rule 24(c) of the Superior Court Rules of Criminal Procedure. We agree and reverse.[6]

We will summarize the most salient evidence, as our decision to reverse hinges in part on the strength of the government's case. The charges against appellant arose out of the shooting death of Aaron Teeter that took place in the courtyard of apartments located in the Southeast section of Washington, D.C. in the early morning hours of April 28, 2007. No witness to the shooting testified at trial. There was testimony that appellant was one of a group of twenty or more persons "hanging out" in the courtyard at that time. A witness who lived in an adjacent apartment unit testified that at about 2:00 a.m. she walked into the courtyard to retrieve her laundry. At that time, she heard Curtis Fogg say softly to appellant, "[a]ll it takes is one shot ... in the back of the head and [Aaron Teeter] will fall."

Less than two hours later, she testified, she was in her apartment unit when she heard a single gunshot. The witness did not tell police what she had seen and heard until after a neighborhood vigil for Teeter was held a few days later. Deputy medical examiner Dr. Sarah Colvin testified that Teeter was killed by a single shot to the back of the head.

Appellant's stepfather, Anthony Hardy, testified that a few days after the murder, he asked appellant about the matter because he had "heard [appellant's] name was involved." Appellant told him that he had shot Teeter "because [Teeter] was hot," meaning a snitch, "and he pulled a gun on [appellant] before." Appellant told Hardy that he had gotten rid of the gun he used to shoot Teeter.

▪ Appellant's younger brother, Elijah Turner, testified that appellant had discussed the murder but did not say that he had killed Teeter. He was impeached with grand jury testimony in which he testified that, shortly after the murder, appellant had told him that he had killed Teeter because he was a snitch.[7]

We will describe in some detail the matters relating to jury selection and excusal, as they are outcome determinative. Judge Robert Richter conducted voir dire on September 15, 2008. Juror 180 was selected to be one of the twelve members of the petit jury. Two alternate jurors were also selected. Juror 180 did not answer any of Judge Richter's questions. When Juror 180, like all prospective jurors, was called to the bench individually and asked by Judge Richter whether there was anything she thought the court should know, she answered that she had a niece who was a detective with the Metropolitan Police De-

---

5. D.C.Code § 7–2506.01 (2001).

6. Hobbs raises three additional issues: (1) that the trial court erred by limiting his cross-examination of Detective Anthony Greene and preventing him from eliciting testimony that Hobbs claims would show bias of another witness, Barbara Robinson; (2) that the trial court erred by limiting his cross-examination of Anthony Hardy and preventing Hobbs from asking about Hardy's knowledge of perjury,

and (3) that there was insufficient evidence to support a conviction of carrying a pistol because the barrel length of the gun was unknown. We reach only the third of these issues for the reasons set out below.

7. The grand jury testimony was admissible into evidence. *See Lewis v. United States*, 996 A.2d 824, 829 (D.C.2010).

partment. She said her niece did not tell her anything about her job and she did not think that it would cause her to favor one side or the other.

Two days later, on September 17, 2008, shortly before the start of trial, Juror 180 indicated that she would like to speak with the presiding judge, Judge Herbert Dixon. Juror 180 first told the judge that she needed to take medication at noon each day and that the medication made her sleepy. Judge Dixon instructed her to take her medication at the instructed time. Juror 180 then said that Judge Richter "evidently" had asked about medication but she "probably didn't hear it" because she "wasn't paying attention" and that she was "a little hard of hearing." The court instructed her that she would have to pay attention during the trial. When the court asked if there was anything else that she neglected to tell Judge Richter, the following exchange occurred:

> THE JUROR: Well, I have problems with the police systems.
> THE COURT: Pardon?
> THE JUROR: I have problems with the officers. I have had run-ins with them.
> THE COURT: You've had run-ins with—
> THE JUROR: And I don't know—
> THE COURT:—a police officer?
> THE JUROR:—how truthful they—all of them. They—they've—all of them. I'm not going to say all, but some of them are not very truthful.

The judge, after apologizing in advance, asked the juror whether she was "saying all of this just to get out of jury duty," to which the juror responded that she was not.

After this inquiry, the government moved to strike the juror for cause or make her an alternate, specifically because of her attitude toward police officers. The court denied the government's request to discharge the juror for cause, and as to the request to make her an alternate, noted that he would "take that under advisement and deal with it." The jury was then sworn, and the trial proceeded.

On September 22, 2008, after jury instructions, the court *sua sponte* called counsel to the bench to deal with the "request pending since the beginning of trial" regarding Juror 180. The government renewed its request that Juror 180 be made an alternate. The defense opposed the request. The trial court designated Juror 180 as an alternate, "out of abundance of caution," replacing her with the juror in seat 13. The court stated: "What causes me to take this position more than anything is not so much the belated attempts to get out of jury service ... but the declaration about ... not trusting and not believing the police."

On appeal, Hobbs argues that the trial court abused its discretion by failing to follow the language in Super. Ct. R.Crim. P. 24(c), which states, in part, "[a]n alternate juror, in the order called, shall replace a juror who, becomes or is found to be unable or disqualified to perform juror duties." We agree, following our recent *en banc* decision on this same issue in *Hinton v. United States,* 979 A.2d 663 (D.C.2009) (en banc).

■ We note that at the time of trial in September of 2008, neither the trial court nor counsel could have been aware of the interpretation of Rule 24(c) that this court first pronounced, en banc, in *Hinton* one year later. To the contrary, they were then bound by this court's earlier opinion in *(Nathaniel) Thomas v. United States,* 824 A.2d 26 (D.C.2003). As we pointed out in *Hinton,* this court had assumed in *Thomas* "that a mid-trial decision to replace an empaneled juror with an alternate

is analogous to a decision to excuse a prospective juror in pretrial voir dire." *Hinton,* 979 A.2d at 688. In *Thomas,* therefore, we recognized a broad discretion in the trial court regarding juror replacement, even during trial. *Thomas,* 824 A.2d at 29–30. *Thomas* also held that such an exercise of discretion, even if erroneous, would not result in reversal unless appellant established prejudice. *Id.* at 30–31.

■ Upon a comprehensive review of the common law genesis of Rule 24(c) and the Rule's drafting history, the en banc court in *Hinton* unanimously overruled *Thomas,* and described a far more limited scope for the trial court's exercise of discretion in ruling on motions for excusal of empaneled jurors. That interpretation of Rule 24(c) applies, necessarily, not only to a trial resulting in a conviction for possession of a controlled substance with intent to distribute, as in *Hinton,* but also to a conviction for the first degree murder of a young man deemed by an appellant to be a "snitch." Moreover, notwithstanding that the excusal of the empaneled juror in this case might not have led to reversal under precedents in force at the time of appellant's conviction, a matter we need not decide, appellant is entitled to the application of the law as it exists at the time of appeal. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Edwards v. United States,* 923 A.2d 840, 841 n. 1 (D.C.2007) (quoting *Davis v. Moore,* 772 A.2d 204, 226 (D.C. 2001) (en banc)) ("all newly declared rules of law must be applied retroactively to all criminal cases pending on direct review or not yet final").

■ We review the trial court's decision to replace a juror with an alternate for abuse of discretion. *Hinton,* 979 A.2d at 683. During voir dire, a trial court has "broad discretion" to strike a juror for cause. *Ahmed v. United States,* 856 A.2d 560, 563 (D.C.2004); *see also Tate v. United States,* 610 A.2d 237, 239 (D.C.1992) (trial court's decision to strike for cause will not be disturbed unless there is "an erroneous ruling coupled with substantial prejudice to the defendant"). However, after jeopardy attaches, a trial court may remove a juror only if the juror is "unable" or "disqualified" to perform juror duties. *Hinton,* 979 A.2d at 671; Super. Ct. R.Crim. P. 24(c).

The government urges us to apply the "good cause" standard in this case, rather than the standard outlined in *Hinton,* because the trial court replaced Juror 180 based on her pretrial statements. To apply that standard would ignore the policy considerations that we identified in *Hinton.* "Once [jurors] start hearing and considering the evidence, individual jurors may evaluate it differently, and they may no longer be viewed as fungible...." *Hinton,* 979 A.2d at 689. The determination whether a trial court has violated Rule 24(c) turns upon not only *why* the juror was removed but also upon *when* the juror was removed. Once jeopardy attaches and jurors begin their duties, they can no longer be removed for reasons that would meet only the good cause standard. This must remain the case even though the trial court indicated that it would take under advisement the request that it make Juror 180 an alternate. Thus, we do not find the government's argument on this point persuasive.

■ In its decision to remove Juror 180, the trial court did not specifically cite Rule 24(c), nor did it use the language of the rule. A trial court need not use this language, however, so long as it "was scrutinizing whether [the juror] had the capacity to continue to serve as a juror." *Hinton,* 979 A.2d at 684. The trial court's statement—that it was removing Juror 180 "out

of abundance of caution"—suggests that the trial court was not applying the standard in Rule 24(c).

Even under this demanding standard, the government argues, the trial court did not abuse its discretion because Juror 180 demonstrated bias that would render her unable or disqualified to perform her duties. We cannot agree. Juror 180's statements to the court concerning her feelings about police officers did not alone demonstrate bias that permitted a Rule 24(c) removal. Notably, the trial court did not ask Juror 180 whether her opinions would cause her to be partial toward one side or in any way affect how she viewed the evidence. The record does not support a finding that Juror 180 was biased. Further, as appellant points out, the trial court had denied the government's motion to strike Juror 180 for cause before the jury was sworn. If there was no "good cause" at that point to strike Juror 180 based on her statements, it follows that those same statements could not establish that she was "unable or disqualified to perform [her] duties" after the close of the evidence. We hold that the trial court erroneously exercised its discretion when it replaced Juror 180 with an alternate after the close of evidence. As this erroneous exercise of discretion was prejudicial to appellant, as we next explain, we conclude that the trial court abused its discretion. *See Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979).

▬ We held in *Hinton* that an appellant does not have the burden of establishing that specific prejudice results from the trial court's erroneous mid-trial excusal of a juror. *Hinton,* 979 A.2d at 689 (citing *United States v. Donato,* 321 U.S.App. D.C. 287, 291, 99 F.3d 426, 431 (1996)). Rather, the burden is on the government to establish the absence of prejudice. Since the failure to observe the requirements of Rule 24(c) is not a constitutional error, it is appropriate to apply the harmless error standard set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *Hinton,* 979 A.2d at 690–91. Thus, the question is "whether the record eliminates the appellate court's doubt about whether the error influenced the jury's decision." *Hinton,* 979 A.2d at 691 (citing *O'Neal v. McAninch,* 513 U.S. 432, 436–40, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)). If we conclude that the error had a substantial influence on the outcome, or if we are left in grave doubt as to whether it did, the conviction cannot stand. *Id.* (citing *Kotteakos,* 328 U.S. at 765, 66 S.Ct. 1239). In *Hinton,* we noted that, "if the government's case is strong and there is no reason apparent in the record to think the erroneously removed juror would have dissented, a reviewing court could be satisfied that the juror substitution had no substantial influence on the outcome." *Id.* at 691–92. However, when the evidence is not overwhelming, "we would be more cautious about finding harmlessness merely because the record offers no insight into the replaced juror's views of the evidence." *Id.* at 692, n. 130.

The government's evidence in this case, though clearly strong enough to support a jury verdict of guilty, is not overwhelming. There was no eyewitness testimony establishing that appellant had shot the victim. A witness testified, however, that she heard a man suggest to appellant that all it would take to kill decedent would be one shot to the back of the head, and the decedent was killed in that manner some two hours later. Other evidence implicating Hobbs was testimony that Hobbs had admitted killing Teeter. One witness, appellant's younger brother, Elijah Turner, testified before the grand jury that Hobbs admitted the killing, but he testified at

trial that he had fabricated his entire grand jury testimony. A second witness who testified about Hobbs's admission was appellant's step-father, Anthony Hardy, a convicted felon and confessed drug addict who originally testified before the grand jury that Hobbs did not admit the killing but later changed his story. We cannot say with sufficient confidence that the outcome would have been the same had Juror 180 remained on the jury. *See Hinton*, 979 A.2d at 692. In fact, the prosecutor at trial suggested as much when telling the court: "I just feel like we're either guaranteeing, or creating a significant chance of either a hung jury or a—a verdict that does not reflect the accurate deliberations of the jury if we don't [make Juror 180 an alternate]." We cannot find the error here harmless.

 Because we reverse on the basis of the juror's removal, we do not reach the merits of his arguments regarding limitations on cross-examination. Before we can order remand and thereby permit a new trial on all charges, however, we must consider his claim that the evidence was insufficient to establish that appellant was carrying a pistol. *See Sykes v. United States*, 897 A.2d 769, 781 n. 7 (D.C.2006); *see also Lyons v. United States*, 606 A.2d 1354, 1361 n. 16 (D.C.1992) (reversed on other grounds) ("[w]e are obliged to address Cooper's sufficiency argument because, if the evidence were insufficient, the Double Jeopardy Clause would bar her retrial").

We conclude there was sufficient evidence to support the conviction of carrying a pistol without a license. Although there was no direct evidence on the gun barrel length, a firearms expert first distinguished between revolvers and semiautomatic or fully automatic pistols and then testified that the bullet fragments and cartridge found at the scene "would have been fired in a semiautomatic pistol" or "fully automatic." This expert testimony was sufficient to enable a reasonable juror to conclude that the gun used to kill Teeter was a pistol.

For the foregoing reasons, the appellant's convictions are reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*